The People *ex rel.* German Insurance Company of Freeport,

*v.*

Milton E. Getzendaner *et al.*

*Filed at Ottawa March 5, 1891.*

1. Mandamus—*what essential—issues of fact.* To authorize the issue of the writ of *mandamus*, the petitioner must show a clear legal right thereto. If the amount or the right involved presents an issue of fact, it must be referred to the arbitrament of a jury, or to the ordinary process of the courts.

2. Same—*municipal indebtedness—mandamus to compel the levy of taxes.* Where the amount of a corporate debt is not disputed, nor any of the facts showing the right to have the same paid, as, when the allegations for the writ of *mandamus* are admitted by demurrer, and the only contention is in regard to a conclusion of law, *mandamus* will lie to compel the levy and collection of a tax for its payment.

3. A writ of *mandamus* to compel the payment of bonds by a town, issued under a law imposing a clear legal duty to take the necessary steps to make payment, will not be refused merely for the reason that the county clerk, town collector and county collector are not shown to have refused to extend, collect or take any steps required of them. The remedy is for a failure of the corporate body to pay or discharge its legal duty, and not for that of the individual officers.

4. Where corporate bonds are issued by a town under a law making it the duty of its proper officers to levy and collect a tax for their payment, *mandamus* will lie to compel the levy and collection of such tax, and its payment, without a judgment against the town fixing the amount of its liability.

5. While a corporate debt remains in its original form, as a simple contract debt, the creditor will have no legal right to a *mandamus* to compel the levy and collection of a tax for its payment, without first having reduced the debt to a judgment, unless it was contracted under a law or vote requiring such proceeding to enforce payment. In such case the creditor has no right to any previously ascertained specific part of the general revenue, and the corporate authorities have a discretion in respect to the purpose and amount of the annual tax they may levy and collect.

6. Same—*of the parties—in mandamus to compel the levy of a tax to pay corporate bonds—as, the bonds of a town.* In a proceeding by *mandamus*, by the holder of corporate bonds, against the town issuing them, to compel payment of the same, with interest, it is sufficient to file the

petition against the town, alone, without naming individuals, to obtain
a peremptory *mandamus* to each of the agencies and instrumentalities
through which it must act to make payment of the claim due the relator; but it is, nevertheless, competent to make the individuals parties
whose duty it is to act. The failure to obtain service upon the town
clerk in such case is not material.

7. In such a proceeding, all the town auditors were made parties
defendant, and all were served except the town clerk, who was absent:
*Held,* that it was competent for those served to act, and that if the town
clerk, at the time of their action, was still absent, and not performing
the duties of his office, it would be the duty of the other members of
the board to declare the office vacant, and appoint some one to fill the
same.

8. INTEREST—*on corporate bonds after maturity, for which no coupons
were given.* Where corporate bonds are issued, payable ten years after
date, with interest at the rate of ten per cent per annum, with coupons
attached for the annual interest up to the maturity of the bonds, such
bonds will bear interest at the same rate after their maturity, though
no coupons are given for such interest.

9. VACANCY IN OFFICE—*town clerk—absence, and neglect to discharge
duties of his office.* Where a town clerk absents himself at a time when
he is required to meet with the town auditors, and thus fails to perform
the duties of his office, the other members of the board may declare
the office vacant, and fill it by appointment.

This is an original proceeding in this court, for *mandamus.*
The petition is as follows:

"*To the Honorable the Supreme Court of the State of Illinois:*

"Your petitioner, the German Insurance Company of Freeport, a corporation existing under and by virtue of the laws
of the State of Illinois, whose principal office or place of business is at the city of Freeport, in Stephenson county, in said
State, now here respectfully shows to this court:

"That on the 30th day of March, A. D. 1869, the county of
Ogle, in the State of Illinois, had theretofore been and then
was duly organized under the township laws of said State, and
that the town of Mount Morris had been created, and then was,
one of the towns of said county, and that on that day there
went into force and effect a certain act of the General Assembly of said State, chartering the Chicago and Iowa Railroad

Company, which corporation thereafterward organized, and proceeded to construct a railroad through said town of Mount Morris; that by the 12th section of that act a special method of holding an election was prescribed, whereby towns, villages or cities along or near where it was proposed by said railroad company to construct its railroad, might aid such company by a donation of their bonds, and should issue to said railroad company their bonds, in such denominations as said company might designate, not less than $100, and bearing interest as should be determined at such election, not to exceed ten per cent per annum, payable annually,—which bonds were to be signed by the supervisor and countersigned by the clerk in towns organized under the Township Organization law; and that when bonds had been so donated, for the purpose of paying the interest and principal thereof, it was further by said section enacted, that any town, village or city so donating, as aforesaid, should, by its proper corporate authority, annually thereafter assess and levy a tax upon the taxable property of such town, village or city, sufficient to pay and liquidate the annually accruing interest on such bonds, and so much of the principal thereof as from time to time should become due,— which taxes were to be levied and collected in the same manner as other corporation taxes in such town, village or city, it being provided that for the payment of the principal thereof said tax should not exceed two per cent per annum; (See 2 Private Laws of 1869, p. 964;) that on the 30th day of June, A. D. 1870, pursuant to petitions made, among other things, setting forth that said bonds were to be made payable within ten years from the date of their issue, and to bear interest from the date of their issue, at the rate of ten per cent per annum, payable annually, and notices given under that act, an election was held in the said town of Mount Morris, whereby a donation of the bonds of that town, to the amount of $75,000, was voted to said railroad company, and on the faith of such donation said railroad company proceeded with

the construction of their railroad through that town; that about the 30th day of June, 1870, the date when the donation of said bonds was voted, said railroad company commenced the construction of its road through said town, and carried forward that work up to and until the 11th day of November, 1871, when the road was very nearly completed; meantime, the issuance of bonds to the railroad company was awaiting the completion of the road, when, on the last named day, before the bonds so voted had been issued, certain tax-payers,— one Daniel J. Pinckney, John W. Hitt, Jacob Mauma, John E. McCoy, Milton Getzendaner and John Sprecher, owners of real and personal estate situated in that town, which property, they alleged, was liable, in common with the other taxable property in said town, to taxation for State, county and township purposes,—exhibited their bill in chancery in the Ogle county circuit court, against said railroad company, the town of Mount Morris, Charles Newcomer, its then supervisor, and Henry H. Clevidence, its then clerk, stating the said act chartering said railroad company, the organization of the company under said act, and that by the 12th section it was provided that on the petition of twenty legal voters of the town along or near which it was proposed to construct the railroad, * * * requesting an election to be held to determine whether such town should * * * make a donation to that company, the town clerk should file such petition, and twenty days before holding the election should post notices stating the object of the election and when it should be held; and it was further expressly provided, that such election should be held and conducted, and returns thereof made, as was provided by the Township Organization law in towns organized under said law.

"It was further alleged in that bill, that on the 9th day of June, 1870, a petition was received by Frederick B. Brayton, then town clerk of that town, praying that an election be held to determine whether that town would make a donation of $75,000 of its bonds in aid of that company; that said town

clerk posted notices for an election, to be held on the 30th day of June, 1870. It was further charged, that on that day voters assembled at the place mentioned in the notices, and between nine and ten o'clock in the forenoon said assemblage or meeting was called to order by said Frederick B. Brayton, acting as town clerk of said town, and thereupon one M. T. Roher was chosen moderator of said meeting, and during the continuance of said meeting acted as such moderator; that after said Roher had been sworn to faithfully and impartially discharge the duties of his said office, the polls were then and there opened, and thereupon a portion of the voters of said town then and there present deposited their ballots for such donation, * * * the remainder of the voters voting * * * deposited their ballots against said donation; that the polls were kept open until six o'clock in the evening of said day; that a canvass of the votes cast showed a majority of fifty-seven votes for the donation, and return thereof was accordingly made to the proper officers; that the railroad company had since complied with the conditions upon which it became entitled to the donation, and that the town officers were about to issue and deliver the bonds of the town to the railroad company, but it was alleged that if the bonds were so delivered they would find their way into the hands of innocent parties, so that those complainants and the other tax-payers of said town of Mount Morris would suffer irreparable injury; that to issue those bonds would violate the constitutional rights of the complainants and the other tax-payers of said town in that behalf, and was an attempt on the part of said railroad company, and said town and its officers, to deprive those complainants and the other tax-payers of said town of their property, * * * and an attempt on the part of said parties to take the property of the complainants and the other tax-payers of said town, and apply the same to a pretended public use, but, in fact, to a private use, without just compensation being made to the complainants and said other tax-payers therefor.

"It was further alleged that the notices posted for the election were void, in that they failed to fully state the object of the election and the rate of interest the proposed bonds were to bear, and that the notices contained other conditions and provisions not authorized by the act incorporating the railroad company, and were, consequently, void. It was further charged in that bill that all the ballots cast were illegal and void, in that the voters voting had no power to determine whether the town should make any donation, or to bind or obligate the town to make the donation or to issue its bonds, and that, in truth and in fact, there were no legal and valid votes or ballots cast at said election.

"The relief prayed was, that the issue of said bonds be perpetually enjoined, and that the assessment or collecting of any taxes upon the taxable property in said town of Mount Morris, to pay said bonds, or any part thereof, be perpetually restrained.

"On the 11th day of November, 1871, when that bill was filed, the property owners and tax-payers of the town of Mount Morris were very numerous, consisting of a great number of persons.

. "Over four months afterwards the railroad company answered separately. The town, her supervisor and clerk joined in their answer. In both these answers it was explicitly admitted that the method by which that election was held was, that the town clerk called the meeting to order; one M. T. Roher was, by the legal voters present, chosen moderator, then sworn to discharge his duties as such; that the polls were then opened, the voters cast their ballots for and against the donation, and that the polls remained open until six o'clock in the evening, and that in this manner was the donation of $75,000 voted, and that the company had, in all respects, fulfilled its obligations.

"On hearing that cause on its merits, the circuit court perpetually enjoined the town and its officers from issuing, and

the railroad company or its agents from receiving, the bonds in question. Thereupon those defendants took that case, by appeal, to the Supreme Court of the State of Illinois, where, on a second hearing on the merits, the judgment of the circuit court was reversed and the bill dismissed. Henry H. Clevidence, a party defendant in that bill, had meantime been succeeded as supervisor by John W. Hitt, who was a complainant therein.

"And your petitioner further shows, that after the opinion of this court in that case had been filed, and while proceedings on rehearing were still pending, negotiations were begun for a settlement of the claim of the railroad company for the $75,000 of bonds. Communications in writing, dated November 14, 1874, signed by property owners and tax-payers in the town, were addressed to the complainants in that suit, advising a compromise with the company, and pledging the influence of the subscribers to induce the town to assume the expenses of the litigation. Two of these communications were signed, respectively, by Reuben S. Marshall and Samuel Domer. At a special town meeting, held on March 19, 1875, resolutions were passed accepting a previous proposition made by the president of the railroad company to the town supervisor, to take bonds to the amount of $50,000 in lieu of the bonds amounting to $75,000, agreeing that the town would pay all the expenses of that suit, amounting to $1600, and thanking their supervisor for his efforts in making the settlement. Afterward, at the annual town meeting held on April 6, 1875, the proceedings of the special town meeting and the resolutions there adopted were fully ratified and approved.

"Your petitioner further shows, that thereupon, in pursuance of said compromise, a series of fifty bonds of said town of Mount Morris, of the denomination of $500 each, were duly made and executed, numbered from 1 to 50, both inclusive, and were each, in substance, as follows:

" 'United States of America,   }   $500.
   *County of Ogle, State of Illinois,* }

   *Mount Morris Town Bond.*

" '*Know all men by these presents,* That the town of Mount Morris, in the county of Ogle and State of Illinois, is indebted to the Chicago and Iowa Railroad Company in the full and just sum of $500, which sum of money said town agrees and promises to pay on the 1st day of May, A. D. 1885, to the said Chicago and Iowa Railroad Company, or bearer, at the Third National Bank of Chicago, Illinois, with interest at the rate of ten per cent per annum, payable, annually, on the 1st day of May, upon the delivery of the coupons severally hereto annexed,—for which payment of principal and interest, well and truly to be made, the faith, credit and property of the town of Mount Morris are hereby solemnly pledged, under authority of an act of the General Assembly of the State of Illinois, entitled 'An act to incorporate the Chicago and Iowa Railroad Company,' approved March 30, A. D. 1869, and of a vote of the people of said town.

" 'This bond is one of a series numbering from 1 to 50, inclusive, for $500 each, which bonds so numbered, together with another series numbering from 51 to 75, inclusive, for $1000 each, are the only bonds issued or to be issued by said town of Mount Morris, under or by virtue of said act.

" 'In witness whereof, the supervisor and town clerk of the said town of Mount Morris have hereto set their hands, this 3d day of May, A. D. 1875.

                    John W. Hitt, *Supervisor.*
H. H. Clevidence, *Town Clerk.*'

"And that, in further pursuance of said compromise, another series of twenty-five bonds of said town, of the denomination of $1000 each, were also duly made and executed, numbered from 51 to 75, both inclusive, and are each, in substance, as follows:

16—137 Ill.

" 'UNITED STATES OF AMERICA,    }                .    $1000.
    *County of Ogle, State of Illinois.* }

*Mount Morris Town Bond.*

" '*Know all men by these presents,* That the town of Mount
Morris, in the county of Ogle and State of Illinois, is indebted
to the Chicago and Iowa Railroad Company in the full and
just sum of $1000, which sum of money said town agrees and
promises to pay on the 1st day of May, A. D. 1885, to the
said Chicago and Iowa Railroad Company, or bearer, at the
Third National Bank of Chicago, Illinois, with interest at
the rate of ten per cent per annum, payable, annually, on the
1st day of May, upon the delivery of the coupons severally
hereto annexed,—for which payment of principal and inter-
est, well and truly to be made, the faith, credit and property
of the town of Mount Morris are hereby solemnly pledged,
under authority of an act of the General Assembly of the State
of Illinois, entitled 'An act to incorporate the Chicago and
Iowa Railroad Company,' approved March 30, A. D. 1869,
and of a vote of the people of said town.

" 'This bond is one of a series numbering from 51 to 75,
inclusive, for $1000 each, which bonds so numbered, together
with another series numbering from 1 to 50, inclusive, for
$500 each, are the only bonds issued or to be issued by the
said town of Mount Morris, under or by virtue of said act.

" 'In witness whereof, the supervisor and town clerk of the
said town of Mount Morris have hereunto set their hands, this
3d day of May, A. D. 1875.

JNO. W. HITT, *Supervisor.*
H. H. CLEVIDENCE, *Town Clerk.*'

"And your petitioner further shows, that said bonds so made
and executed were by said town delivered to said railroad
company, and that afterwards, and long before the maturity
of said bonds, your petitioner, relying on the judicial sanction
which said bonds had received by this court, for a good and
valuable consideration, purchased of and from said railroad

company, of said $500 denomination and series, the following bonds, to-wit: Nos. 1, 2, 5, 9, 12, 14, 16, 21, 22, 23, 25, 27, 29, and 30 to 47, inclusive; and that at the time of purchasing said last above described bonds, for a like good and valuable consideration, your petitioner, before maturity thereof, purchased of and from said railroad company, of said $1000 denomination and series, the following bonds, to-wit: Nos. 57, 65, 66, and 68 to 75, inclusive.

"And your petitioner further shows, that each of said bonds so as aforesaid belonging to your petitioner, had, when so purchased, attached to it ten coupons, each one of which coupons was for the payment, annually, of interest, at the rate of ten per cent per annum, accruing on the bond to which it was so attached,—all of which coupons have been paid, except the last three thereof on each of said bonds of your petitioner; that all of said above specified bonds were sold as aforesaid, and delivered to your petitioner, and that the same have continued to be, and now are, the property of your petitioner; that the face amount thereof, exclusive of all interest thereon, is $26,500, and that the other issued bonds of said town not so purchased by your petitioner were disposed of, as your petitioner is informed and believes, and so states, to various other persons.

"And your petitioner further shows, that after said town of Mount Morris had, by annual taxation of the property therein, paid the annually accruing interest on said bonds for a space of about seven years, on or about the 28th day of April, A. D. 1882, one John Harmon, (together with said Samuel Domer,) one David Fager, and said Reuben S. Marshall, being owners of property, both real and personal, in said town of Mount Morris, and residents of said town, exhibited in the circuit court of said Ogle county another bill in chancery, in their own behalf and in the behalf of all the other tax-payers of the town of Mount Morris, against your petitioner, together with other alleged holders and owners of said bonds, both known

and unknown, the county treasurer of said county of Ogle, the county clerk of said county, and the Auditor of Public Accounts of the State of Illinois, setting forth, in substance, among other things, the making, execution, delivery and ownership, as aforesaid, of said bonds; that the supervisor and town clerk of said town had no power, right or authority to issue said bonds; that they were wholly void, and not binding upon said town; that the issue of said bonds had not been authorized by a vote of the people of said town prior to the adoption of article 14 of the present constitution of the State of Illinois, nor had the issue of any bonds of said town to said railroad company, or for its use, been authorized in the manner provided in the act to incorporate said railroad company; that no election had been held in said town pursuant to said act, but that said instruments were executed and issued wholly without authority of law, and praying the collection of any tax or taxes upon the property of the complainants in that bill and the other tax-payers of said town, to pay said bonds or any part thereof, or the interest thereon, be perpetually enjoined, and that the holders of said bonds be perpetually enjoined from collecting, or in any manner attempting to collect, the same or any part thereof or any interest thereon, and that said bonds be decreed to be null and void, and that those complainants, and the other tax-payers of said town, be forever released and discharged from payment thereof and from further payment of any interest thereon, and that those complainants might have such other and further, and such further and different, relief in the premises as should be agreeable to equity, and praying a writ of injunction to all the aforesaid ends,—which injunction was by said circuit court allowed, and served upon your petitioner and said other defendants; and, by an amendment to said last mentioned bill, a further ground against the validity of said bonds was alleged, to-wit, that they exceeded the constitutional limitation to which said town could become indebted, and that said bonds had been

voted on condition that said town should have the benefit of the act of the General Assembly of the State of Illinois approved April 16, 1869, commonly called the 'Grab law,' but that said act contravened the constitution of said State, whereby such·benefit had been wholly lost to said complainants.

"And your petitioner further shows, that it filed its answer to said last mentioned bill and amendment thereto, among others denying, all and singular, all the allegations impeaching said bonds therein, as aforesaid alleged, and setting forth that it had purchased the hereinbefore specified bonds for a good and valuable consideration, relying, among other things, upon the judicial sanction which the said bonds had received by the then said former judgment of the Supreme Court of the State of Illinois upon the validity of the power to issue the same, and pleading and setting up the said first hereinbefore mentioned proceedings and decree in estoppel and bar of that said second bill.

"And your petitioner further shows, that thereupon such proceedings were had in said circuit court of Ogle county, that eventually, on a hearing on the merits thereof, said last mentioned injunction was dissolved and said bill dismissed, whereupon the complainants therein prosecuted their appeal to the Appellate Court in and for the Second District of said State, whereby said injunction was continued, and wherein such proceedings were had that the decree of said circuit court in· that behalf was, on the hearing on the merits, affirmed, whereupon a further appeal was by those said complainants prosecuted to the Supreme Court of said State, whereby said injunction was further continued in full force, and where such proceedings were had that, by the consideration and judgment of such court, said judgment of said Appellate Court was, on full hearing on its merits, finally affirmed, and an opinion of said court rendered therein, a copy of which opinion is herewith appended, marked 'Exhibit A,' and is made part hereof, but that said complainants thereupon filed their petition for

a rehearing in said Supreme Court, which petition was finally denied at the March term thereof, A. D. 1888.

"And your petitioner further shows, that it has long since cut off, sold, assigned, transferred and delivered to third persons the unpaid coupons which were attached and belonged to its said several bonds, so that, by reason of the premises, there now remains due and unpaid but the principal sum or face amount of each and every one of its said bonds, with interest thereon from the 1st day of May, A. D. 1885, at the rate of ten per cent per annum.

"And your petitioner had well hoped that upon the termination of said last mentioned litigation, said town of Mount Morris and the proper corporate authorities thereof would have paid the interest and principal of said bonds so belonging to your petitioner, and have levied a tax for that purpose, according to law, but now so it is that the voters of said town, well knowing the premises, at the annual town meeting of said town, held on the 3d day of April, A. D. 1888, passed a resolution, and placed the same on the records of said town, to the effect that it was the sense and will of that meeting that the town of Mount Morris pay only the face of said bonds, and the board of town auditors of said town of Mount Morris, well knowing the judgments in the aforesaid respective cases have been finally rendered against said town, have combined and conspired, together with other officers whose duty it was to act officially in raising money by taxation to pay said bonds, to enable said town to evade the payment thereof, and in furtherance of said combination and conspiracy the said board of town auditors have neglected and disregarded their duty under the law to audit said bonds so belonging to your petitioner, or any of them, or any part thereof, and to certify to the same, so that the town clerk of said town might certify the same to the county clerk of said county, and the amount necessary to pay said bonds might be levied and collected of the taxable property in said town.

"And your petitioner further shows, that on the 1st day of September, A. D. 1888, said Milton E. Getzendaner was, has continued to be, and still is, the supervisor of said town of Mount Morris; Andrew Shecter was, has continued to be, and still is, the town clerk of said town; John Weller and said Samuel Fagar were, have continued to be, and now are, the justices of the peace of and resident in said town; James D. Hayes was, has continued to be, and still is, town collector of said town; Henry P. Lason was, has continued to be, and still is, county clerk of said county; and James C. Fesler was, has continued to be, and still is, county treasurer and county collector of said county of Ogle.

"And your petitioner further shows, that on the 4th day of September, A. D. 1888, at the semi-annual meeting of the board of town auditors of the said town of Mount Morris, your petitioner presented to said board its account against said town for the principal sum of your petitioner's said bonds, and the interest thereon since the maturity of its said bonds, at the rate of ten per cent per annum, up to that date, and also, then and there, in support of its said claim, produced and exhibited its said bonds to said board, and requested and demanded of said board that it should audit and allow the same, in favor of your petitioner, as a claim against said town, but said board then and there neglected and refused to allow the same; and that it was the duty of said board to have made a certificate, to be signed by a majority of said board, specifying the nature of your petitioner's claim, and to whom the amount thereof was allowed, and to have caused such certificate to be delivered to the town clerk of said town, so that the aggregate amount of the claim of your petitioner could, by the proper authority of said town, be certified to the county clerk of said Ogle county, at the same time and in the same manner as other amounts required to be raised for town purposes, to be levied and collected as other town taxes.

"And your petitioner further avers and charges, that said town has very little, if any, money on hand,—less than, to-wit, $1000,—which could be used towards the payment of said bonds or any part thereof so belonging to your petitioner, and that it is absolutely necessary that proceedings by *mandamus* should be taken against said town and the county officers whose duty it is to act officially in levying and collecting taxes to pay said bonds of your petitioner, to compel them to proceed, according to law, to levy and collect a tax to pay the said bonds of your petitioner, or else they will continue to neglect and avoid their duty in respect thereto.

"And your petitioner further shows, that no taxes whatever have been levied or collected since the year A. D. 1882, to pay any interest on the bonds of your petitioner, and that not one dollar of interest or principal has been paid on its said bonds for the last six years, but that said town and its officers and a large portion of its tax-payers have been and now are, since the Supreme Court of said State has repeatedly decided in favor of the validity of said bonds, resisting and opposing the collection and payment of said bonds and interest thereon, by means of which they hope to successfully repudiate said indebtedness of said town, or a portion thereof, by means whereof your petitioner has been and is deprived of the money due it on its said bonds, and has no adequate remedy, except by *mandamus* proceedings, against the officers of said town of Mount Morris and of the county of Ogle whose duty it is to levy and collect taxes upon the taxable property in said town of Mount Morris to pay said bonds; and unless your petitioner can obtain aid and redress by this method, it will sustain a loss to a large amount, to-wit, to the amount of at least $40,000.

"Your petitioner further shows, that said town of Mount Morris, in territory, is to the extent of a full Congressional township of land, and that the property therein, real and personal, subject to taxation, was, by the State equalized valuation for the year A. D. 1882, of the value of $629,673; by

the State equalized valuation for the year A. D. 1883, of the value of $638,106; by the State equalized valuation for the year A. D. 1884, of the value of $617,328; by the State equalized valuation for the year A. D. 1885, of the value of $547,-652; by the State equalized valuation for the year A. D. 1886, of the value of $511,659; by the State equalized valuation for the year A. D. 1887, of the value of $508,955; by the State equalized valuation for the year A. D. 1888, of the value of $519,290.

"Your petitioner further shows, that on the 1st day of May, A. D. 1885,—the maturity of its said bonds,—and on the 1st day of each May thereafter succeeding, until the thereafter annually accruing interest upon its said bonds, and the principal thereof, should have been fully paid and satisfied, your petitioner was entitled to have, upon the taxable property of said town as the same was so annually equalized, a tax collected for its benefit, not exceeding two per cent per annum; and your petitioner here claims that, by reason of the premises, it is now here entitled to aggregate said several annual taxations, as the same should have been, but were not, collected and paid to it, and have all of the same levied and collected at one and the same time, to apply on said bonds of your petitioner.

"Your petitioner therefore now here prays that your honors may award a writ of *mandamus*, at the suit of the People of the State of Illinois, upon the relation of your petitioner, to issue out of this court, directed to the board of town auditors of the said town of Mount Morris, the town clerk of said town, the county clerk of the county of Ogle, the town collector of said town of Mount Morris, the supervisor of said town, and the county collector and county treasurer of said Ogle county, commanding them and each of them, respectively, to do every act and thing devolving upon them by law, as such officers, for the levy, collection and payment of a tax sufficient to pay said bonds, besides interest thereon since said 1st day of May,

A. D. 1885, at the rate of ten per cent per annum; and particularly that said board of town auditors of said town of Mount Morris may be commanded forthwith to audit and allow said bonds so belonging to your petitioner as a claim against said town of Mount Morris, in favor of your petitioner, and to make, sign and deliver to the town clerk of said town a proper certificate thereof, as required by the township organization acts in reference to claims audited and allowed against towns, specifying the nature of said claim and to whom the amount is allowed, and to do each and every act and thing in reference to said bonds of your petitioner that the Township Organization law requires of them in reference to lawful claims against said town, so as to put the same as quickly as possible in process of payment, by the levy and collection of a tax therefor; and also particularly commanding the town clerk of said town of Mount Morris to properly file in his office the claim of your petitioner against said town, founded on said bonds so belonging to your petitioner, when the same shall have been audited and allowed by the board of town auditors of said town, and certified to him by said board, and then immediately to certify the amount thereof, or so much thereof as may by law be annually assessed and collected upon said claim of your petitioner, together with any other charges and demands which it is his duty to so certify, to the county clerk of said Ogle county, at the same time and in the same manner as other amounts required to be raised for town purposes, and commanding him to do every act and thing in reference to said bonds of your petitioner which is required of him by law in reference to other audited claims against the town, so as to enable the amount thereof to be levied with the levy made in the year 1888 for town purposes, and collected with the town taxes in said year; and also particularly commanding the clerk of said Ogle county to estimate and determine the rate per cent upon the proper valuation of property in said town of Mount Morris, in the year 1888, that will pro-

duce an amount sufficient to pay said bonds so belonging to your petitioner, and the interest thereon, and then to extend the same upon the same book upon which he extends other town taxes of said town of Mount Morris levied in the year 1888, and commanding him to include the collection thereof in his warrant to the collector of said town of Mount Morris; and also commanding said county clerk of Ogle county to do every act and thing in respect to the levy, assessment, extension and collection of a tax to pay said bonds of your petitioner, that the law requires of him in reference to other similar claims against said town certified to him by the town clerk, according to law; and also particularly commanding the town collector of said town of Mount Morris to collect the tax extended by the county clerk of said Ogle county upon the collector's books for said town of Mount Morris, so far as he is able to do so, and if he does not succeed in collecting the same, to make a proper return to the county collector of the amount uncollected, as in case of other taxes which he is unable to collect, and as the law requires, and to do every act and thing in respect to said tax for the payment of said bonds which the law requires of him in reference to any other tax levied to pay a claim against said town; and also particularly commanding said county treasurer and collector of the county of Ogle to collect all of said tax levied and assessed to pay said bonds which may be reported or returned him as unpaid by the town collector of said town of Mount Morris, or in case the same is not collected by him, that he then proceed and sell the delinquent property upon which the said tax remains unpaid, after having taken all the preliminary steps required of him by law to entitle him to sell delinquent property, and commanding him to do every act and thing in reference to such tax which the law requires of him in respect to any other unpaid tax levied to pay a town claim; and also particularly requiring the supervisor of said town of Mount Morris to pay to your petitioner, for the satisfaction of its said bonds, all

money that may come into his hands from the collection of said tax levied to pay said bonds and interest thereon.

"That in case it shall, appear, upon the return day of the summons issued herein, that the board of town auditors of said town of Mount Morris have neglected, at their semi-annual meeting holden on the 4th day of September, 1888, to audit and allow and properly certify the amount due on said bonds of your petitioner to the town clerk of said town as a claim against said town, or in case it shall appear that the said town clerk has neglected or evaded properly certifying said claim to the county clerk of said Ogle county, then, in such case, your petitioner prays that, pursuant to the law in such case made and provided, it may be awarded a judgment for $1000 damages against the officer, or each and every of the officers, so delinquent, besides being allowed a peremptory *mandamus* commanding the officer or officers so delinquent to forthwith perform the duties so neglected by them.

"And your petitioner also prays for such other and further or different and other relief in the premises as the nature and exigencies of its case may require, and as shall to your honors seem meet."

The petition is properly verified by affidavit, and accompanying it, as an exhibit, is a copy of the opinion of this court in *Harmon et al.* v. *Auditor of Public Accounts et al.* 123 Ill. 122.

Milton E. Getzendaner, supervisor of the town of Mount Morris, in Ogle county, John Weller and Robert McClure, justices of the peace of said town, Ira Wingart, town collector of said town, Henry P. Lason, county clerk, and James C. Fesler, county treasurer and county collector of said county, demurred to the petition, and for cause of demurrer alleged that said petition does not show that any judgment had been obtained against said town of Mount Morris, and in favor of said petitioner, for the amount due on the bonds described in said petition; that said petition states that said petitioner demanded that the board of town auditors of the town of Mount Morris

should allow, as a claim against said town, the principal sum of said bonds, and interest thereon since their maturity, and up to the date of such demand, at the rate of ten per cent per annum, when, by the terms of said bonds, they do not bear interest after their maturity at all. They do not, by their terms, provide for the payment of any interest after their maturity, or any interest other than that evidenced by the coupons attached thereto, and if they bear interest at all, it is not at a greater rate than six per cent per annum after their maturity, and therefore said auditors rightfully refused to audit and allow the sum demanded; that the petition shows that the bonds referred to therein were by their terms payable at the Third National Bank of Chicago, Illinois, and there is no allegation in the petition that demand was made or that they were presented there for payment; that it does not appear from said petition that Henry P. Lason, county clerk of said county of Ogle, has been requested or that he has refused to estimate and determine the rate per cent, and to extend the same upon the tax books of the said town of Mount Morris; that it does not appear from said petition that the said James C. Fesler, county collector of said Ogle county, has been requested, or refused, to sell the delinquent property upon which the said tax should hereafter remain unpaid, and to do and take such other steps as are required of him by law; and that it does not appear from said petition that the said Ira Wingart, town collector of said town of Mount Morris, has refused to collect any tax extended by the county clerk, or that he has refused to make proper return to the county collector of amounts uncollected, as in the case of other taxes which he is unable to collect, nor that he has refused or neglected to do all which the law requires of him in reference to taxes levied to pay claims. There is no appearance by John H. Miller, town clerk of the town.

Mr. J. A. Crain, for the relator:

Municipal bonds, drawing interest at a specified rate, continue, after maturity, to draw the same rate of interest until payment, or judgment thereon. *Phinney* v. *Baldwin*, 16 Ill. 108; *Etnyre* v. *McDaniel*, 28 id. 201; *Cook* v. *South Park Comrs.* 61 id. 124; *Town of Ohio* v. *Frank*, 103 U. S. 697; *Cromwell* v. *County of Sac*, 96 id. 60; *Scotland County* v. *Hill*, 132 id. 108; 1 Sutherland on Damages, 545, 547.

It is but a rule of practice in the Federal courts, peculiar to those tribunals, that they must have first obtained jurisdiction by a judgment recovered in those courts, before they will award *mandamus* to aid in collecting such judgment. *Chickaming* v. *Carpenter*, 106 U. S. 663; *Davenport* v. *County of Dodge*, 105 id. 237; *County of Greene* v. *Daniel*, id. 187; *Graham* v. *Norton*, 15 Wall. 427; *Bath County* v. *Amy*, 13 id. 244.

A judgment against the town of Mount Morris would have been a useless pursuit, as no execution could have been awarded or issued against the town. *United States* v. *Board of Auditors*, 28 Fed. Rep. 408; Const. 1870, art. 9, sec. 12; *Chicago* v. *Halsey*, 25 Ill. 595; *City of Paris* v. *Cracraft*, 85 id. 294; *Norton* v. *Peck*, 3 Wis. 714; *School District* v. *Wood*, 13 Mass. 193; *Drake* v. *Phillips*, 40 Ill. 388.

The constitution of Illinois imperatively requires every municipal corporation thereafter incurring any indebtedness, to, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and to pay and discharge the principal thereof within twenty years from the time of contracting the same. The Mount Morris bonds were issued May 3, 1875, now over fifteen years ago. *East St. Louis* v. *People*, 124 Ill. 665; *East St. Louis* v. *Amy*, 120 U. S. 600.

When there is a clear legal right on the part of the bondholder, coupled with a corresponding duty on the part of the municipal authorities to provide, by taxation, the means of

payment, *mandamus* will lie to compel the levy and collection of the necessary tax. *Maddox* v. *Graham*, 2 Metc. 56; *Columbia County* v. *King*, 13 Fla. 451; *Commonwealth* v. *Commissioners*, 32 Pa. St. 221; *Commissioners* v. *Councils of Pittsburg*, 33 id. 508; *People* v. *Mead*, 24 N. Y. 114; *Commissioners* v. *Bailey*, 11 Kan. 631; *Flag* v. *Palmyra*, 33 Mo. 440; *State* v. *Commissioners*, 6 Ohio St. 284; *Pegran* v. *Commissioners*, 64 N. C. 557; *Shelby County* v. *Railroad Co.* 8 Bush, 209.

When a municipality has been authorized by law to donate its bonds in aid of a railway, and the statute so authorizing such donation also requires such municipality, by its proper corporate authorities, to assess and levy taxes to pay interest and principal of such bonds, and such municipality has so issued its bonds, *mandamus* will lie in favor of the bondholder to compel the corporate authorities to levy the necessary tax to pay such obligations. *A fortiori*, in a case where, on suit between such municipality and the bondholder, his bonds have been adjudged valid before *mandamus* applied for. *Harmon* v. *Auditor*, 123 Ill. 135; *Railroad Co.* v. *Pinckney*, 74 id. 277; *Hanna* v. *Read*, 102 id. 596; *Tilley* v. *Bridges*, 105 id. 336; *Gage* v. *Stokes*, 125 id. 40; *Culver* v. *Phelps*, 130 id. 223; *Miller* v. *Pence*, 131 id. 125.

It is not necessary that the bondholder should first resort to a suit, to fix the amount due upon his bonds, since this is merely a question of mathematical calculation. *A fortiori*, where, before *mandamus* applied for, as between the parties, such bonds have been adjudged valid. High on Extraordinary Remedies, (2d ed.) sec. 384; *Commissioners* v. *King*, 13 Fla. 467; *Ohio* v. *Commissioners*, 6 Ohio St. 287.

It is not necessary, in cases where the law puts a duty to be performed upon corporate officers, to show any express refusal, in terms, upon their part, to lay the foundation for *mandamus*, if it is apparent, from their conduct, that they do not intend to perform the act required. High on Extraordinary Remedies, (2d ed.) sec. 382; *Maddox* v. *Graham*, 2 Metc.

70; *Attorney General* v. *Boston,* 123 Mass. 477; *The King* v. *B. and A. Canal,* 3 A. & E. 217; 4 Nev. & M. 871; *The King* v. *Lord of Milverton,* 3 A. & E. 284; *The King* v. *East India Co.* 4 B. & A. 530; *The King* v. *Archdeacon,* 3 A. & E. 615; 5 Nev. & M. 494; *The Queen* v. *St. Margaret's Vestry,* 8 A. & E. 889; *The Queen* v. *Commissioners,* id. 901; *Commonwealth* v. *Pittsburg,* 34 Pa. St. 512; *People* v. *Supervisors,* 3 Mich. 475.

It is proper practice in *mandamus* proceedings to include all persons as defendants whose co-operation is required to secure to the relator his legal rights. *Commissioners* v. *Moulton,* 112 U. S. 223; *Farnsworth* v. *Boston,* 121 Mass. 173; *Attorney General* v. *Boston,* 123 id. 460; *The King* v. *Mayor,* 8 Mod. 111; *The King* v. *Mayor,* 1 Ld. Raym. 559.

In a case where a town officer has withdrawn from the jurisdiction of the court to evade its process, and, it may be presumed, will not return within its jurisdiction, and that he will omit an act required of him to be performed in connection with the assessment and levy of taxes, section 193, chapter 120, of the Revised Statutes of 1874, authorizes the court, in case such omission does occur, to supply such omitted act, and make the same conform to law. *Supervisors* v. *Rogers,* 7 Wall. 177.

Mr. RECTOR C. HITT, and Messrs. BREWER & STRAWN, for the respondents:

At common law there was no such thing as interest on indebtedness of any kind. 6 Jacobs' Law Dic. 373; *City of Pekin* v. *Reynolds,* 31 Ill. 529; *Madison County* v. *Bartlett,* 1 Scam. 67.

Interest is the creature of the statute, alone, and to it we must look for authority for its allowance. *City of Pekin* v. *Reynolds,* 31 Ill. 529; *Chicago* v. *People,* 56 id. 327; *Madison County* v. *Bartlett,* 1 Scam. 67.

A municipal corporation is not liable to pay interest in the absence of an express agreement to do so. *Chicago* v. *Allcock,*

86 Ill. 384; *South Park Comrs.* v. *Dunlevy,* 91 id. 49; *City of Pekin* v. *Reynolds,* 31 id. 529; *Madison County* v. *Bartlett,* 1 Scam. 67; *Railroad Co.* v. *Blaisdell,* 72 id. 148; *Brewster* v. *Wakefield,* 22 How. 118; *Burnhisel* v. *Firman,* 22 Wall. 170; *Holden* v. *Trust Co.* 100 U. S. 72.

Prior to the act of 1884 *mandamus* would not issue if the relator had another legal remedy. *School Inspectors* v. *People,* 20 Ill. 526; *People* v. *Wiant,* 48 id. 268; *People* v. *Huntoon,* 71 id. 536; *Commissioners* v. *People,* 99 id. 587.

There is no right to *mandamus* until the relator has reduced his claim or demand to a judgment. *Jerome* v. *Rio Grande County,* 18 Fed. Rep. 873; *State* v. *Snodgrass,* 98 Ind. 546; *Mansfield* v. *Fuller,* 50 Mo. 338; *State* v. *New Orleans,* 30 La. Ann. 82; *Rogers* v. *People,* 68 Ill. 154; *Davenport* v. *Dodge County,* 103 U. S. 237; *Green County* v. *Daniel,* 102 id. 218; *Chickaming* v. *Carpenter,* 106 id. 663.

There is no part of the law relating to *mandamus* better settled, than that there must first be a demand and a refusal to act before a *mandamus* will issue. *State* v. *Schaack,* 28 Minn. 358; *Lavalle* v. *Soucy,* 96 Ill. 467; *School Directors* v. *People,* 79 id. 511; *People* v. *Huntoon,* 71 id. 536; Tapping on Mandamus, 320; *Railroad Co.* v. *Olmstead,* 46 Iowa, 316; *State* v. *Adams,* 19 Neb. 370; *People* v. *Hyde Park,* 117 Ill. 462; *Supervisors* v. *People,* 110 id. 577; *Klokke* v. *Stanley,* 109 id. 192; *Boner* v. *Adams,* 65 N. C. 639.

Writs of *mandamus* do not issue as a matter of course. It is not a writ of right. It will not be issued by the Supreme Court unless the right of the party claiming the interference of the Supreme Court by *mandamus* is clear and certain, absolute and positive, perfect and complete. *People* v. *Forquer,* Breese, 104; *People* v. *Town of Oldtown,* 88 id. 202; *People* v. *Head,* 25 id. 325; *Commissioners* v. *People,* 99 id. 587; *People* v. *Warfield,* 20 id. 159; *People* v. *Lieb,* 85 id. 484; *People* v. *Glann,* 70 id. 232; *People* v. *Curyea,* 16 id. 547; *People* v. *Davis,* 93 id. 133; *Woodbury* v. *Commissioners,* 40

Me. 304; *State* v. *Graves*, 19 Md. 351; *County of St. Clair* v. *People*, 85 Ill. 396; *People* v. *Commissioners*, 118 id. 239; *People* v. *Village of Crotty*, 93 id. 180; *People* v. *Johnson*, 100 id. 537; *State* v. *Snodgrass*, 98 Ind. 546; *State* v. *Police Jury*, 39 La. Ann. 759; *Towle* v. *State*, 3 Fla. 202; *Auditorial Board* v. *Hendrick*, 20 Texas, 60.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

That the bonds described in the petition were lawfully issued and are now binding obligations of the town, is settled by *Chicago and Iowa Railroad Co.* v. *Pinkney*, 74 Ill. 277, and *Harmon et al.* v. *Auditor of Public Accounts et al.* 123 id. 122, and questions in that respect are no longer open to discussion. The only question affecting the amount due to the petitioner from the town, not settled by the decisions in those cases, relates to interest upon the bonds after due. The language of the bonds, respecting interest, is, the town shall pay the principal "on the 1st day of May, A. D. 1885, to the said Chicago and Iowa Railroad Company, or bearer, at the Third National Bank of Chicago, Illinois, with interest at the rate of ten per cent per annum, payable, annually, on the 1st day of May, upon the delivery of the coupons severally hereto annexed," and the contention on behalf of the respondents is, inasmuch as no coupons were issued for interest to accrue after the maturity of the bonds, it was not intended the bonds should bear interest after their maturity. We are committed to a contrary rule. In *Phinney* v. *Baldwin*, 16 Ill. 108, the question was, whether a promissory note, payable thirty days after date, and bearing interest from date at the rate of five per cent per month, bore that rate so long as the principal remained unpaid, and it was held that it did. This ruling was re-affirmed in *Etnyre et al.* v. *McDaniel*, 28 Ill. 201, and it was followed by the Supreme Court of the United States in *Ohio* v. *Frank*, 103 U. S. 697, where the question was, whether

a township bond, payable at a time mentioned, with interest from date at a specified rate, bore the same rate of interest after maturity, in the absence of an express promise to that effect, and it was held that it did.

*Pruyn* v. *City of Milwaukee,* 18 Wis. 367, is, so far as concerns this question, precisely analogous to the present case, and it was there ruled that the bonds bore the agreed rate of interest after as well as before maturity, and notwithstanding no coupons were issued for that interest. It was, among other things, said in the opinion: "It is said that the bonds in this case were made payable on a specified day, 'together with interest thereon at the rate of ten per cent per annum, payable annually, on presentation of the annexed warrants,' and that this language manifests an intention of the parties that the rate of interest stipulated should cease on the maturity of the bonds. We confess we are unable to discover any such intention or design, express or implied, in this language. By the clause in the bond above cited, the parties provided for the payment of interest *annually,* at the rate specified, on the presentation of the coupons. Quite likely the parties expected the bond would be paid at maturity; but if it were not so paid, we have no manner of doubt but that it was expected and intended that the bond should draw interest at ten per cent until paid." See, also, Tiedeman on Com. Paper, sec. 412, and cases cited in note 3; Jones on Corp. Bonds and Mortgages, sec. 260, and cases cited.

But it is contended on behalf of counsel for respondents, that, conceding the relator is lawfully entitled to the amount claimed in its petition, yet, inasmuch as its claim has never been reduced to a judgment, it is not entitled to proceed by *mandamus.* It is provided in the twelfth section of the act to incorporate the Chicago and Iowa Railroad Company, (2 Private Laws of 1869, p. 962,) that "any town * * * so * * * donating its bonds shall, by its proper corporate authority, annually thereafter assess and levy a tax upon the taxable

property of such town  *  *  *  sufficient to pay and liquidate the annually accruing interest on such bonds, and so much of the principal thereof as from time to time shall become due,—. which taxes shall be levied and collected in the same manner as other corporate taxes in such town." There is, therefore, here presented a lawful debt against the town, for the payment of which it is the duty of its proper officers to assess and levy a tax upon the taxable property of the town, and the failure of those officers to perform that duty; and it is clearly settled by the weight of authority that *mandamus* lies in such case to compel the levy and collection of the requisite tax, and its payment to the lawful holders of the indebtedness. *Maddox* v. *Graham,* 2 Metc. 56; *Shelby County* v. *C. and O. R. R. Co.* 8 Bush, 209; *Comrs. of Knox County* v. *Aspinwall,* 24 How. 376; *Commonwealth* v. *Pittsburgh,* 34 Pa. St. 496; *Commonwealth* v. *Comrs. of Allegheny County,* 37 id. 277; 32 id. 218; *State* v. *Comrs. of Clinton County,* 6 Ohio St. 289; *Pegram* v. *Comrs. of Cleveland County,* 64 N. C. 557; *Comrs. of Columbia County* v. *King,* 13 Fla. 451; *Robinson* v. *Supervisors of Butte,* 43 Cal. 353; *Comrs. Court* v. *Rather,* 48 Ala. 433; *Comrs. of Sedgewick County* v. *Bailey,* 11 Kan. 631; *State* v. *Anderson County,* 8 Baxter, 249; *Flagg* v. *Mayor,* 33 Mo. 440; *The People* v. *Mead,* 24 N. Y. 114.

The cases cited by counsel for respondents from the Reports of the United States courts, (*Jerome* v. *Comrs. of Rio Grande County,* 18 Fed. Rep. 873, *County of Green* v. *Daniel,* 102 U. S. 187, *Davenport* v. *County of Dodge,* 105 id. 237, and *Chickamauga* v. *Carpenter,* 106 id. 663,) rest upon the fact that the Circuit Courts of the United States are creatures of statute, and have only so much of the judicial power of the United States as the acts of Congress have conferred upon them, and those acts have conferred upon them no power to issue writs of *mandamus* as an original proceeding, but they are empowered to issue them only when such writs are necessary to the proper exercise of their existing jurisdiction, as,

in the enforcement of judgments at law against municipal corporations. See *Bath County* v. *Amy,* 13 Wall. 244;. High on Extraordinary Remedies, sec. 302.

In *Rogers* v. *The People,* 68 Ill. 154, cited by counsel for respondents, the statute prescribed a specific mode for the collection of the judgment against the school directors, which was adequate, and held to be exclusive, and so *mandamus* would not lie.

In *Coy* v. *City Council of Lyons,* 17 Iowa, 7, also cited by counsel for respondents, the ruling is, simply, that "where a debt remaining in its original form as a simple contract debt, the creditor has no legal right to a *mandamus* to compel the city to levy and collect a tax for its payment, unless the debt is contracted under a special law or vote authorizing such proceeding to enforce payment; but where the debt has been reduced to judgment, there is then devolving upon the city authorities a perfect legal duty and obligation to provide for its payment."

There was like ruling in this court in *The People ex rel.* v. *Clark County,* 50 Ill. 214, where it was sought, by *mandamus,* to compel the levy and collection of a tax for the payment of a county order drawn upon the general revenue fund, and it was held that *mandamus* would not lie, but that the holder of the order must first reduce it to judgment. In such cases no single general creditor has a right to any previously ascertained specific part of the general revenue, and there is, moreover, judgment and discretion to be exercised by the municipal authority with respect to the purpose and amount of general revenue which they shall annually cause to be collected by taxation upon the taxable property of the municipality; and they are therefore in nowise analogous to cases like the present, where there is a specific duty to levy and collect taxes for the payment of particular debts, in which there is neither judgment nor discretion to be exercised by the municipal authority.

We have often held, that to authorize a *mandamus* to be issued, the petitioner must show a clear legal right. *The People* v. *Forquer*, Beecher's Breese, 104; *The People* v. *Chicago and Alton Railroad Co.* 55 Ill. 95; *The People* v. *Glann*, 70 id. 232; *The People* v. *Village of Crotty*, 93 id. 180; *Lavalle* v. *Soucy*, 96 id. 467; *The People* v. *Dulaney et al.* id. 503. And all of the cases cited by counsel for the respondents which we have not herein commented upon, belong to this class,—the facts were not admitted, and the amount or the right involved presented an issue of fact. "It is not the province of *mandamus*," says High in his work on Extraordinary Remedies, (sec. 339, 2d ed.) "to settle the differences of opinion between municipal authorities and claimants, as to the amount due for services rendered. All such cases of disputed accounts or claims against the municipality should be referred to the arbitrament of a jury or to the ordinary process of the courts, and they can not be determined by proceedings in *mandamus*." (See, also, *Barnett* v. *Auditor*, 12 Ohio, 54, and *Commonwealth* v. *Comrs. of Allegheny County*, 16 S. & R. 317, cited by the author in support of his statement.) But there are here no facts in dispute. The allegations of the petition are admitted by the demurrer to be true, and the only contention is in regard to a conclusion of law, as to which, in our opinion, there is no doubt, and the case is therefore clearly within the authority of *Maddox* v. *Graham*, and other cases cited *supra*, holding that *mandamus* will lie.

It is further contended by counsel for the respondents, that as to the county clerk, town collector and county collector, (treasurer,) *mandamus* will not lie, because it is not made to appear that those officers, or either of them, have or has, up to this time, refused to extend, collect or take any steps required of them, or either of them, by law, in reference to the matter in dispute. This loses sight of the controlling fact, here, that the duty to pay is that of the town, as a corporate body, and not of individuals, although that duty can only be

discharged through the acts of individuals. The failure to pay is that of the corporate body, and it is because of that failure only, and to compel the performance of the corporate duty in that respect, that a *mandamus* will be awarded. Were a like duty required to be performed by a natural person instead of by an artificial person, under such circumstances that *mandamus* would lie, no one would suppose it necessary to prosecute a separate suit to enforce the performance of each distinct step necessary in the collection and paying over of the money; and yet there can, in theory, be no difference between a natural and an artificial person, in this respect. The different officers appointed by law as the agencies and instrumentalities through which corporate action shall be taken, are to the corporate body but as the members of the natural person, through which he or she can alone act, are to that person; and in either case, to coerce action of the parts it is only necessary to inquire, is there a right to coerce action of the person, either natural or artificial, the person being responsible for the failure to act. It would, therefore, in the present case, doubtless, have been sufficient to have filed the petition against the town, without naming individuals, to have obtained a peremptory *mandamus* to each of the agencies and instrumentalities through which it must act to make payment of the claim due the relator; but it was competent to make the individuals whose duty it is to act, parties, as was here done. (*Village of Glencoe* v. *The People*, 78 Ill. 386; *Sheaff* v. *The People*, 87 id. 189.) But it is, obviously, in either event, the action of a corporate body, and not the action of natural persons, as such, merely, that is to be enforced. The question involved in this contention of counsel for the respondents is exhaustively discussed, and decided against them, in *Labette County* v. *Moulton*, 112 U. S. 223. See, also, *Farnsworth* v. *Boston*, 121 Mass. 173; *Attorney General* v. *Boston*, 123 id. 123; *King* v. *Mayor of Tregony*, 8 Mod. 111.

The person acting as town clerk was not personally served with the summons. It is claimed, and with some show of reason, that he avoided personal service in order to defeat the awarding of the peremptory writ. We do not think it necessary to inquire into this, and ascertain what is the fact. All of the town auditors except the town clerk were personally served. It is competent for them to proceed to act, and if, when they do so, the town clerk shall be absent, and not performing the duties of his office, it will be their duty to declare the office vacant, and to appoint a town clerk in his stead. (2 Starr & Curtis' Stat. chap. 139, art. 10, secs. 1, 2; art. 13, secs. 1, 2, same chapter.) And the same is true with regard to any other member of the board.

The demurrer is overruled, and judgment is rendered awarding a peremptory writ, as prayed in the petition.

*Mandamus awarded.*