# City of Chicago, et al., v. The People of the State of Illinois, ex rel. Union Trust Company.

## Gen. No. 11,350.

1. SPECIAL ASSESSMENT VOUCHERS—*interest payable upon.* Vouchers issued by a municipality in payment of a local improvement bear interest at the legal rate.

2. CONCLUSION OF PLEADER—*what is a.* Where a municipality in order to defeat mandamus to compel an appropriation to pay a debt endeavors to invoke the rule (not determined in this case to be the rule) that it is obligated to make various payments and provide for specific expenditures which are entitled to preferential treatment, and that it has reached the limit of its constitutional power to borrow money, it should aver such facts as will enable the court to judge of the preferential nature of such indebtedness and the extent of the borrowing already done.

3. PUBLIC BENEFITS—*assessments for, bear interest.* Assessments against a municipality for the benefit of the public, arising by reason of a special assessment, draw interest in like manner as do the assessments made against the private owners of property directly benefited by such assessment.

Mandamus proceeding. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed October 25, 1904.

FRANK JOHNSTON, JR., for appellants; EDGAR BRONSON TOLMAN, Corporation Counsel, and ROBERT REDFIELD, of counsel.

HOLDEN & BUZZELL, for appellee; WILLIAM H. HOLDEN, of counsel.

MR. PRESIDING JUSTICE STEIN delivered the opinion of the court.

This is an appeal from a judgment ordering the issue of a peremptory writ of mandamus. The relief awarded concerns the appropriation by the city of Chicago of the amounts due by it to sundry special assessments for the public benefits assessed against the city and which are necessary to enable the city to pay the vouchers issued by it

City of Chicago v. The People.

in payment of the improvements involved in the special assessments.

The city caused sundry local improvements to be made wherein it was adjudged to be generally benefited to the extent of specific amounts divided into five installments, one payable immediately and the others payable annually with interest at six per centum per annum. The improvements were duly completed and the city issued its special assessment vouchers to the sundry contractors for the amounts due them for the work done payable out of the several installments as collected by the city. These vouchers to the extent mentioned in the judgment appealed from remain due and unpaid and draw interest at six per cent, and are the property of the relator. The amounts owing by the city for its public benefits have never been provided for by it and are necessary to enable it in the due management of its accounts, by credits to the accounts of the several special assessments, to pay these vouchers. The city council has neglected to make any provision, by appropriation or otherwise, for the payment of these public benefits.

The pleadings consist of a petition setting forth the foregoing facts, that is to say, the proceedings for the assessments, the issue of the vouchers, their maturity and nonpayment, the judgments for the public benefits, the failure of the city to appropriate funds to pay the latter and the necessity of such appropriation to enable the officers of the city to pay the vouchers and making the city of Chicago and sundry officers of the city and the members of its city council [defendants. The answer of respondents substantially admits all the material allegations of the petition, but alleges that the vouchers do not carry interest beyond their maturity; that the public benefits judgments do not bear interest and that the city cannot incur any additional indebtedness by reason of the constitutional limitation in that behalf; that the city must first maintain its police and fire departments and pay the expenses of the business of the municipality; that the income available from all sources

for the current year will not exceed $11,409,466.46; "that the actual necessities of the city for operating expenses alone, excluding the necessities for debts and for better-ments as presented by heads of the departments to the comptroller and now by him presented to the finance committee of the city council exceed $16,000,000;" that there are "public benefits" judgments unpaid of about $1,000,000 and other judgments against the city for over $4,000,000, and that the present condition of the revenues of the city does not permit the payment of any of these judgments; that the bonded indebtedness of the city is $15,123,000 and it has issued unpaid tax warrants amounting to $4,003,500; that all these liabilities bear interest which must be provided for in the annual appropriation bill, but no part of the principal thereof can now be paid; that all of said liabilities are of the same class as those for which the city is asked to provide payment in the petition herein; that the petitioner has no right to priority over the persons interested in the payment of the other unpaid "public benefits" of the amount of $1,000,000, nor are said public benefits judgments entitled to priority in payment before the other judgments and the bonds above mentioned; that the financial condition of the city presents a problem the solution of which requires the unhampered and uncontrolled discretion of the legislative branch of the city and that no judicial question is presented in such solution. A reply was filed which was treated by the parties as a demurrer to the answer. The cause came on for hearing upon the petition, the answer and the reply considered as a demurrer.

A peremptory writ of mandamus was ordered to issue requiring the defendants, and particularly the city council, to appropriate the necessary funds for the payment of said public benefits and the interest thereon, and further providing that the amounts of said appropriation be limited to a sum sufficient to enable the city to pay to relator the principal and interest due to it on said vouchers, approximating to $1,775.82.

City of Chicago v. The People.

The assignment of errors questions the propriety of the judgment and the allowance of interest on the public benefits.

Excepting the matter of interest, appellants concede that the relator on the face of his petition is entitled to the relief prayed for; but they contend that the writ of mandamus should not have been awarded, because in this record it is an admitted fact " that the actual necessities of the city for operating expenses alone " largely exceed " the income available from all sources for the present year." Such being the case, it is contended upon the authority of East St. Louis v. The People, 6 Ill. App. 79; City of Sherman v. Smith, 12 Tex. Civ. App. 580; State ex rel. Marchand v. New Orleans, 37 La. Ann. 15; State v. Sheldon, 53 Neb. 365; Coffin v. City Council of Davenport, 26 Ia. 516, and other cases, that if the financial condition of a municipality be such that it cannot provide for the payment of judgment creditors and at the same time make necessary provision for its ordinary or current expenses, it is its primary duty to defray the latter before paying the judgment or other creditors. In other words, the current expenses of a municipality are entitled to priority over any other of its obligations.

Assuming the rule to be as claimed (a proposition which we do not decide), we are of opinion that the condition of the record before us is not such as to admit of its application. It does not appear with that certainty which the rules of pleading require that the city is unable to pay the public benefits which it is ordered to pay. True, it appears that the available income for the current year will not exceed $11,509,466.46 and that the " operating expenses " largely exceed that sum; but there is no showing or averment what is meant by or included within that phrase or what the " operating expenses " are for. Even if it be admitted that there are departments, such as the police, fire and the public schools, the expense of maintaining which must be provided for in preference to the cost of public improvements, and that the city should not be ordered to pay the latter, when it has no money left to do

it with, yet for aught shown by the answer that very item may be included in the phrase "operating expenses." The averment in that regard is a mere conclusion of the pleader; he should have shown expressly and without leaving it to inference or intendment that the operating expenses arose out of the maintenance of certain specifically mentioned departments to which the law gives a preference. Moreover, while the available income that will not exceed $11,509,466.46 is that "for the current year," yet nothing is said as to the length of time covered by the operating expenses. They may be those of one year or any number of years. If, as is quite consistent with the pleading, the expenses alleged to exceed sixteen million dollars cover a period of two or more years, the expenditures per year would be much below the yearly income.

The views above expressed also dispose of the objection that the indebtedness of the city is already in excess of the constitutional limit. So far as appears it will not be necessary for the city to borrow money in order to carry out the order of the court. It is not shown that there is not sufficient on hand for the purpose.

In its order for a mandamus the trial court directed the payment of interest on the public benefits and on the vouchers held by relator, even after their maturity. While it is true that in the special assessment act there is no express provision that public benefits shall bear interest, yet the words "special assessment" in the first line of section 55, article 9, part 1 of Cities and Villages Act, 1 Starr & Curtis (1896), p. 781, (which section provides for the division of special assessments into installments payable annually and drawing interest) include public benefits. Section 24 of the same article of said act makes it "the duty of such commissioners * * * to estimate what proportion of the total cost of such improvement will be of benefit to the public, and what proportion thereof will be of benefit to the property to be benefited, and apportion the same between the city or village and such property so that each shall bear its relative equitable proportion; and

City of Chicago v. The People.

having found said amounts, to apportion and assess the amount so found to be of benefit to the property upon the several lots, blocks, tracts and parcels of land in the proportion in which they will be severally benefited by such improvement; * * * and provided further that it shall not be necessary for said commissioners to examine the locality except where the ordinance provides for the opening, widening or improvements of streets and alleys."

It seems to us plain from the foregoing language that the assessment against the municipality for the benefit of the public as provided for in section 24 is a "special assessment" equally and to the same extent as the special assessment against the private property owner who—it is conceded—must pay interest on the installments payable annually in pursuance of section 55. Whether the expense of the improvement be assessed against the individual owner or against the municipality, there is a "special assessment" just as much in the one case as in the other.

Nor did the court err in ordering that relator's vouchers should draw interest after the maturity thereof. Said section 55 provides that "each of said four last named installments shall bear interest at the rate of six per cent per annum payable in each year." Under section 63 of said article 9 "the amount remaining due upon the contract for said improvement shall then be divided into four equal parts, and the authorities of any city, incorporated town or village shall issue a voucher to the person or persons entitled thereto for each part, payable in the same order and manner that the installments are payable, and said vouchers shall bear the same rate of interest per annum that the said installments bear, which interest shall be paid on the first day of July, October or January after their date * * * to the person holding such voucher."

In People v. Getzendaner, 137 Ill. 234, certain bonds drew "interest at the rate of ten per cent per annum, payable annually on the first day of May upon the delivery of the coupons severally hereto annexed." Inasmuch as no coupons were issued for interest to accrue after the maturity

of the bonds, it was contended that no interest was payable afterwards. · The Supreme Court, citing many cases, overruled the contention and held that although no interest coupons had issued for the period after maturity, yet interest would accrue. We regard the facts of that case as making more strongly against the allowance of interest than the. facts at bar for the reason that the statute does not provide for the issuance of interest coupons, and it therefore cannot be argued as it was in the Getzendaner case that the failure to execute coupons for interest after maturity indicated an intention that there should be none.

While it may be true that the interest on vouchers must be paid out of the funds realized from the special assessment, as intimated in People v. Chicago, 152 Ill. 546, yet that circumstance furnishes no argument against our conclusion. The estimates on the expense of the assessment should in the first place be made large enough to cover any possible interest accruing subsequently to the maturity of the bonds.

The judgment appealed from is affirmed.

*Affirmed.*