EDWARD C. JONES COMPANY, DEFENDANT IN ERROR, v. THE TOWN OF GUTTENBERG AND THE BOARD OF COUNCILMEN OF THE TOWN OF GUTTENBERG, PLAINTIFFS IN ERROR.

Argued June 26, 1901—Decided November 15, 1901.

1. Upon the trial of an issue of fact at the Circuit, arising from the granting of an alternative writ of *mandamus*, it is not within the power of the judge to determine whether the facts admitted in the record and proved on the trial authorize the proceedings by *mandamus*.

2. This court, upon the entire record, will, on writ of error, determine whether a peremptory writ of *mandamus* should issue.

3. Under an act authorizing a town to issue bonds and use the proceeds to pay other bonds legally issued and remaining unpaid, the holder of such unpaid bonds is entitled to payment of them, even though judgments have been recovered upon the coupons taken from said bonds after the bonds became due, when the proper municipal authorities had determined they shall be paid under the provisions of the act.

4. Interest on bonds due will be allowed at the rate specified in the bonds, although the legal rate of interest was changed between the time of the issue of the bonds and the time they became due. *Quære.* Whether interest on coupons in the hands of holders of the bonds will be allowed.

5. Where an act authorizes the board of councilmen of a town to pay certain indebtedness from the proceeds of bonds to be issued and sold, and the board proceeds under the provisions of the act and ascertains the amount for which they will be issued, advertises for proposals to take the bonds and accepts the proposals and awards the bonds, the actual issue of the bonds is only a ministerial duty.

6. *Mandamus* is the proper remedy to enforce performance by public boards of purely ministerial duties.

7. *Mandamus* will lie when the relators' right is clear and they are without any other adequate specific remedy.

8. Inadequacy and not absence of all other legal remedies and the danger of the failure of justice without it, usually determines the propriety of the writ of *mandamus.*

9. When a municipal body has determined to perform a ministerial duty, a change in the membership of the body will not relieve from the performance of that duty when the rights of others have intervened.

10. When an act of the legislature has authorized an issue of bonds and provided for a sinking fund and a tax for the payment of the principal and interest thereof, the fact that moneys may be realized by the municipality under an adjustment by commissioners of taxes and assessments, will be no justification to a refusal to issue bonds which the municipal body has already agreed to issue.

On error to the Supreme Court. For opinion of the Supreme Court, see *ante p.* 58.

For the plaintiffs in error, *Charles C. Black.*

For the defendant in error, *Charles L. Corbin.*

The opinion of the court was delivered by

GARRETSON, J. By an act of the legislature approved March 9th, 1898 (*Pamph. L., p.* 63), entitled "An act authorizing

towns to issue bonds for the purpose of raising money to pay certain bonds and improvement certificates and interest thereon, and judgments recovered thereon heretofore legally issued and now due," it was provided: "It shall be lawful for the town council or other governing body of any town in this state to provide for the payment of all bonds and improvement certificates heretofore legally issued by said town for or on account of any street improvement or improvements, and now remaining unpaid, and for the payment of interest due thereon and of any judgments recovered on any such bond or bonds, improvement certificate or certificates, by the issue and sale of the corporate bonds of such town in an amount not exceeding the total amount due by the town on and for the bonds, improvement certificates, interest and judgments aforesaid." The act also contained provisions as to the denomination of the bonds to be issued, the time they should run, date, rate of interest, manner of execution, how the payment of principal and interest should be provided for and how the bonds should be sold.

In compliance with the provisions of this act, the board of councilmen of the town of Guttenberg, on March 21st, 1898, resolved that, pursuant to the act aforesaid, in order to provide for the payment of outstanding bonds, amounting to $26,000, with accrued interest thereon additional thereto, theretofore legally issued by said town January 1st, 1876, and which became due January 1st, 1886, and outstanding improvement certificates legally issued by said town, aggregating $12,025.36, and past-due and accrued interest and judgments against said town upon bonds and interest due on bonds and unpaid improvement certificates legally issued by said town, aggregating $29,679.99, with interest thereon from the date of recovery thereof, they did determine that there be issued by said town of Guttenberg bonds to the amount of $90,000; that the resolution also fixed the date of the bonds, denomination, rate of interest, when and where payable and when the bonds should become due; how the bonds should be executed, and that they should be sold to the highest bidder, but not at less than par; the resolution also determined that the

moneys derived from the sale of the bonds should be applied and used for the payment of the bonds, improvement certificates, interest and judgments so as aforesaid legally issued, recovered and unpaid, and further determined how moneys should be raised to pay the principal and interest of the bonds, following, in all particulars, the provisions of the act.

The council, under the resolution, advertised for bids for these bonds, and the relators being the highest bidders therefor, on the 8th day of April, 1898, by resolution, awarded the bonds to them.

This resolution to issue bonds was, on the 28th of April, 1898, removed into the Supreme Court by *certiorari*, and its legality assailed on the ground that the act authorizing it was unconstitutional. The Supreme Court held the act to be constitutional, and affirmed the resolution (*Hermann* v. *Guttenberg*, 33 *Vroom* 605); and the judgment of the Supreme Court was affirmed by this court. *Hermann* v. *Guttenberg*, 34 *Id.* 616.

The town council, subsequent to the determination of the Supreme Court, refused to issue the bonds to the relators, and a rule to show cause why a *mandamus* should not issue was obtained, and the Supreme Court ordered the alternative writ to issue. This writ, dated May 18th, 1900, recites that, on March 21st, 1898, there were outstanding and unpaid bonds and improvement certificates of the town of Guttenberg theretofore legally issued by said town, on account of said improvements and interest thereon and sundry judgments recovered on certain of said bonds and improvement certificates and interest thereon, all as set forth in the resolution, a copy of which was annexed to the writ; that the board of councilmen of the town of Guttenberg did, on the day and year last aforesaid, resolve and determine that there be issued by said town of Guttenberg bonds to the amount of $90,000, pursuant to the provisions of the act of the legislature above referred to, as appears by the same resolution; that the board of councilmen advertised for bids for said bonds, and the relators bid the highest bid therefor and complied with the terms of the sale, and, on April 8th, 1898, the board of councilmen did

resolve to award the bonds to the relators at the price bid, bonds to be delivered and paid for, at the rate bid, on or before the 1st of May then next; that a writ of *certiorari* was sued out of the Supreme Court April 18th, 1898, to review the validity of the resolution and award, and, on November 28th, 1898, the resolution awarding the said bonds to the relators was affirmed; and the judgment of the Supreme Court affirming the resolution was also affirmed by the Court of Errors and Appeals, at the November Term, 1899, and the record remitted to the Supreme Court; that after the affirmance by the Supreme Court, and before the issuing of the writ of error, the board of councilmen, on February 9th, 1899, did adopt a form for said bonds and enter the same in the minutes, and set forth, at length, the form of the bond and the coupon; that they did resolve that after the execution of the bonds they should be delivered, in accordance with the terms of sale, on receipt of the purchase price therefor, to the relators; that it appears that the relators did approve said bonds as to form, and, on December 27th, 1899, tendered themselves ready to take the said bonds and pay for the same at the price bid, nevertheless the defendants have refused, and still do refuse, to issue or deliver to the relators the said bonds, and then commands the defendants to sign, seal and deliver to the relators the said bonds, to the par value of $90,000, in conformity to the award of said bonds or cause to the contrary signify.

To this alternative writ of *mandamus* the defendants made return May 29th, 1900, setting up the incorporation of the town of Guttenberg and a provision of the charter for five councilmen, with their terms of office; that three of the councilmen were elected in April, 1899, and that the resolution set up in the writ was not passed by the present councilmen, but by their predecessors in the same office, and the present council was not bound to issue said bonds, because they were not authorized or ordered by the present board of councilmen, and it is not for the best interest of the town to issue said bonds; that commissioners of adjustment had been appointed and had qualified, and had made a report and a rule to show cause why the report should not be confirmed was about to be

granted; that when the amount of taxes as shown in the report of the adjustment commission should be collected, there would be no necessity for issuing $90,000 worth of bonds, and if any bonds were thereafter necessary to be issued, such bonds could be issued on much more advantageous terms; that the town of Guttenberg does not owe $90,000 of debt, as stated in the resolution, and that it would not be to the best interest of the town to issue $90,000 worth of bonds; that on January 8th, 1900, the check of $500 deposited by the relators with the town, which was accompanied by their bid, was tendered back by the town to the relators and refused by them; that the statements set forth in the copy of the resolution annexed to the writ are true; that it is true, on April 8th, 1898, the then existing board of councilmen did resolve to award the bonds to the relators at the rate named, bonds to be delivered and paid for at the rate as stated in the writ, which resolution was affirmed as set forth in the writ; that the form of the bond set forth in the writ is a copy of the bond which was proposed to be issued by the then councilmen, together with the form of coupon; that the relators approved the form of the bond, and on December 27th, 1899, tendered themselves ready to take the said bonds, which was refused by the present councilmen, and the said $500 deposited with them was tendered back to the relators and they refused to accept the same.

This return was demurred to, and the Supreme Court held that the defendants were entitled to judgment on the demurrer, on the ground that as the relators, by demurring, admitted the truth of the statement that the town did not owe $90,000, the municipality was without power to issue the bonds. *Jones Co.* v. *Town of Guttenberg, ante p.* 58.

While it may be that, under the rule, a pleading should be taken most strongly against the pleader, and that the defendants, by not denying in the return that allegation in the writ that the resolution for the issue of the bonds had been questioned and affirmed in the Supreme Court and in this court, and alleging in the same return that the council had no jurisdiction to pass the resolution because the town was not indebted to the amount of $90,000, made contradictory

allegations, and therefore the demurrer should have been sustained, yet that question is not presented by this writ of error.

After sustaining the demurrer leave was granted to the relators to file a replication, and an issue was made as to whether the defendants did owe $90,000 of debt, as stated in the alternative writ.

This issue was sent to the Hudson Circuit for trial, and it being there determined, as appears by the *postea,* that the defendants did owe $90,000 of debt, as the relators alleged, judgment was entered in the Supreme Court that a peremptory writ of *mandamus* issue to the defendants to issue to the relators the bonds mentioned amounting to $90,000.

A writ of error was then issued to review this judgment, under the provisions of the act of March 17th, 1870. *Gen. Stat., p.* 2001, § 5.

Two classes of error may be considered—one arising from the ruling of the judge upon the trial of the issue, and the other upon the pleadings, as they appear in the record, as to whether the case set forth was such a one as authorized in law the issue of the writ.

The judge at the Circuit could not determine this latter question; he was only to try the issue sent him, and any exception to his action upon the question as to whether a writ of *mandamus* should issue or not could not form the basis of an assignment of error.

The assignment of error which can be considered upon the exception taken at the trial of the issue at the Circuit are only such as go to the question which arose in determining that issue. These are as to the admission and rejection of evidence offered to prove the issue on the trial, the refusal to nonsuit and direct a verdict for the defendants and the direction by the judge of a verdict for the relators.

We think there was no error by the judge in any of these particulars; he rejected no legal evidence, and the evidence upon the only issue which he was to try was so full and plenary as to require him not only to refuse a nonsuit and direction of a verdict for the defendants, but to direct a verdict for the relators.

The relators proved that the town owed judgments of the character of those mentioned in the act, which, with interest, aggregated more than $40,000. It is not claimed that the judgments and interest thereon are not to be considered in ascertaining whether the town owed $90,000.

Unpaid bonds of the face value of $25,000 were offered in evidence. The bonds, by their terms, became due January 1st, 1886; they bore interest, when issued, at the rate of seven per cent. per annum, and the accumulated interest upon them, at that rate, to March 28th, 1898, was more than $21,000; these two amounts, aggregating $46,500, added to ¡the amount due on the judgment, makes more than $95,000, and even if we should allow only six per cent. interest on the bonds from the time they became due, the total amount would still be more than $90,000.

It is claimed that the face amount of some of the bonds not put into judgment should not be reckoned in the ascertainment, because the holders thereof had recovered judgments upon the coupons of these bonds after the bonds became due, and thereby had barred a recovery of the principal sum, basing this claim upon a *dictum* in the case of *Holmes* v. *Seashore Electric Railway Co.,* 28 *Vroom* 16, 18, where the judge says: "If this suit would lie and the plaintiff recovered judgment, the question might be suggested whether he would have any remedy to recover the principal sum of the bonds. A recovery for part of an entire debt bars an after suit for the balance." In that case the question for decision was whether a suit would lie on overdue interest coupons on bonds secured by mortgage on lands in this state after the passage of the act of March 23d, 1881, which requires that when a bond and mortgage has been given for the same debt, the first proceeding shall be' to foreclose the mortgage. The question suggested by the *dictum* was not in the case under consideration, and not necessary to be determined. But the bond and the coupons are not parts of one debt—they are separate debts, and may be held by different persons, and suit on the one should not bar suit on the other.

Besides, this proceeding is not a suit on the bonds or any-

thing in the nature thereof. By the act of 1898, *supra,* it was made "lawful for the town council or other governing body of any town in this state to provide for the payment of all *bonds* and improvement certificates heretofore legally issued by said town for or on account of any street improvement or improvements *now remaining unpaid,*" &c. These bonds, when produced in evidence, were unpaid, appeared to have been legally issued and they were within the exact terms of the act. It was not a question to be considered whether the town had any defence to them other than illegality of issue and payment. It made no difference whether or not the town, by reason of anything that happened after these legally issued bonds became due, was relieved of their payment; if they actually remained unpaid, they were to be taken into account in ascertaining what amount of new bonds should be issued.

The town also, by the resolution adopted, recognized the unpaid bonds and determined to pay them. Each of these bonds declared that the town of Guttenberg was held and firmly bound to ————, or assigns, in the sum of five hundred dollars, payable in ten years from date thereof, with interest on the said sum at the rate of seven per cent. per annum, payable semi-annually on the first days of January and July in each year, on presentation to the treasurer of said town and surrender of the coupons annexed.

The bonds bore date January 1st, 1876, and so became due January 1st, 1886.

The bonds were subject to interest from the time they became due. *Jersey City* v. *O'Callaghan,* 12 *Vroom* 349, 353; *Ohio* v. *Frank,* 103 *U. S.* 697.

We also think that the bonds bore interest after they became payable at the rate of seven per cent. That was the legal rate when they were issued; it was the rate mentioned in the contract, and would not be changed because the legal rate was reduced from seven per cent. to six per cent. July 1st, 1878 (*Jersey City* v. *O'Callaghan, supra; Cox* v. *Marlatt,* 7 *Vroom* 389) ; but, as already stated, it matters not in this proceeding whether the interest on the bonds is reckoned at

six per cent. or seven per cent., as the amount of $90,000 is exceeded by the use of either rate.

Unpaid coupons of the face value of $1,837.50 were offered in evidence. These were, within the terms of the act, to be paid, and the statute of limitations would not bar a recovery, because the town, by resolution, recognized them and determined to pay them. It may be doubtful whether interest should be paid on coupons remaining in the hands of the holders of the bonds, but neither the amount of the coupons nor the interest upon them was necessary to be considered to make up the amount of $90,000.

Upon the trial the defendants offered to prove the appointment of commissioners under the Martin act and the proceedings by that commission; also that the councilmen, at the time of the trial, were not the same as those in 1878, when the resolution referred to in the relators' writ was put into effect. Neither of these questions was within the issue presented to the judge to try, nor could proof of them tend to establish the contention of the defendants as to that issue; the evidence was clearly immaterial, and was properly overruled by the judge.

The record in the case so sets forth the facts admitted and found that this court is authorized to review the action of the Supreme Court in granting the peremptory writ.

It fully appears that the board of councilmen, acting under a valid law, determined that the town was indebted in the manner indicated in that law to the amount of $90,000, and determined to issue bonds for that amount to pay the indebtedness; that they advertised for proposals for the bonds, and the relators having made the most advantageous bid therefor, they awarded the bonds to them, and that the board afterwards refused to issue the bonds.

The town council having determined to issue the bonds and sell them to the relators, all the duties imposed upon them by the act calling for the exercise of discretion had been performed, and the actual issue of the bonds was purely ministerial. The board was exercising its discretion in determining to act under the law, in ascertaining the amount of

the bonds to be issued and fixing the terms thereof, in advertising for bids and accepting the bid of the relators, but when the bid had been accepted, and the relators had complied with the conditions required, the relators had a right to have, and it was the ministerial duty of the defendants to issue, the bonds.

If the claimants' right is clear, and they have no other adequate remedy, *mandamus* is the proper remedy to enforce the performance by public boards of purely ministerial duties. 2 *Spell. Extr. Rel.,* §§ 1431, 1432; 2 *Dill. Mun. Corp.* (4th ed.), § 832; 19 *Am. & Eng. Encycl. L.* (2d ed.) 778; *Smith* v. *Bourbon County,* 127 *U. S.* 105, 110; *Cincinnati Railroad Co.* v. *Clinton County,* 1 *Ohio St.* 76, 105; *Le Grange* v. *State Treasurer,* 24 *Mich.* 468, 477; *Commissioners of Noble County* v. *Hunt,* 33 *Ohio St.* 169, 175.

The claimants' right to these bonds is clear, and they are without any other adequate specific remedy. No specific remedy is provided by statute for the recovery of these bonds or damages for failing to issue them, nor does any exist in any common law action. The claimants could not bring an action of replevin, trover or detinue, and if an action as for a breach of contract could be maintained, it is difficult to see what would be the measure of damages, and if damages were recovered, the relators might be compelled to proceed by *mandamus* to compel the town to levy a tax to pay the judgment. 2 *Bail. Jur.,* § 566.

"It is the mere inadequacy, and not the mere absence, of all other legal remedies, and the danger of the failure of justice without it, that must usually determine the propriety of this writ. Where none but specific relief will do justice, specific relief should be granted, if practicable, and when a right is single and specific, it usually is practicable. To supersede the remedy by *mandamus* a party must not only have a specific, adequate legal remedy, but one competent to afford relief upon the very subject of his application; hence an action for damages against an officer for neglect of duty is not equally convenient, beneficial and effective as the proceeding by mandate,.

since it would not compel him to do the specific act." 2 *Bail. Jur.*, §§ 580, 581.

In 2 *Dill Mun. Corp.*, § 829, it is said: "If a statute prescribes a specific remedy, particularly if adequate in its nature, such a remedy is ordinarily, if not always, exclusive of *mandamus,* which will not, in such case, be granted; but if no particular remedy be given, and there is no other plain and effectual mode of relief, *mandamus* is proper in all cases where it is adapted to enforce the right and duty in question. It has repeatedly been held, both in England and in this country, that where there is a clear legal right in the relator the writ will not be refused merely because there is also an adequate remedy in equity or a remedy at law if the latter be not adequate to the purpose, or because the officer or adverse party may be prosecuted criminally for neglect of duty." *State* v. *Holliday, Overseer,* 3 *Halst.* 205; *Laird* v. *Abraham,* 3 *Gr.* 22; *In re Trenton Water Power Co., Spenc.* 659.

In *State* v. *Paterson, &c., Railroad Co.,* 14 *Vroom* 505, 510, it is held that two things must concur to authorize the issuing of a *mandamus*—a specific legal right and the absence of any efficient legal remedy—and the writ was denied in that case because the defendant had made an agreement and entered into a bond to do what was sought to be enforced by *mandamus.*

The disposition of our courts is to compel municipalities to do exactly what the statute authorizing official action says shall be done. Courts are not inclined to substitute for a directed course of specific duty a suit for damages against a corporation for breach of that duty by the officials. *Hopper* v. *Township of Union,* 25 *Vroom* 243; *Reock* v. *City of Newark,* 4 *Id.* 129.

The duty to issue the bonds being ministerial and upon the board of councilmen, which was a continuous body, that duty could not be avoided because of a change in the membership of the board, under a claim, after such change and after the bonds had been awarded, of a right to review the discretion of previous members, because the relators, by the acceptance

of their bid, had acquired rights of which they could not be deprived in that way.

The fact that commissioners of adjustment had been appointed under the Martin act could not affect in any way the proceedings under the act in question, because it does not appear that the moneys to be collected under the adjustment were applicable, by the terms of the act of 1898 and the resolution adopted by the board of councilmen, to the payment of the bonds to be issued, but if any moneys are collected under the adjustment, which, by the terms of the act are applicable to the payment of these bonds, the act provides they shall go in the sinking fund created and to be used for their payment as they come due.

The judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, DEPUE (CHIEF JUSTICE), VAN SYCKEL, GARRISON, GUMMERE, FORT, GARRETSON, HENDRICKSON, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM. 14.

*For reversal*—None.