CHARLES C. READ v. THE BOARD OF EXCISE COMMIS-
SIONERS OF THE CITY OF CAMDEN AND THOMAS
MADDEN.

CHARLES C. READ v. THE BOARD OF EXCISE COMMIS-
SIONERS OF THE CITY OF CAMDEN AND JOSEPH
GOETSINGER.

Argued June 2, 1908—Decided November 17, 1908.

Section 45 of the Inns and Taverns act (*Gen. Stat.*, p. 1794), which
provides that the signers of a recommendation for a license shall
not have recommended another application in the same township,
city or borough for the same year, is a subsisting and paramount
regulation of the subject that is unaffected by "An act to estab-
lish an excise department in cities of this state" (*Pamph. L.* 1902,
p. 628), or by the creation of the administrative tribunals con-
templated by that act, and that is unrepealed and irrepealable
by the legislative acts of such bodies.

On *certiorari.*

Before Justices GARRISON, SWAYZE and PARKER.

For the prosecutor, *Howard M. Cooper.*

The opinion of the court was delivered by

GARRISON, J. The writs that have been argued together
bring up licenses granted by the board of excise commissioners
of the city of Camden, respectively, to Thomas Madden, on
January 8th, 1908, and a similar license granted to Joseph
Goetsinger. The first and second reasons filed by the prose-
cutor raise a single question that is common to both cases.
These reasons are—*"first,* because the act of 1902 (*p.* 628)
creating excise boards did not confer upon said boards unlim-
ited jurisdiction, but that said boards in the granting of
licenses are bound by the law of the state regulating the sale
of intoxicating liquors; *second,* because the petition accom-
panying the application for said license did not contain the

names of twelve freeholders who had not signed other applications within one year."

The state of facts upon which these reasons are predicated is established by the depositions taken under a rule of court. In the case of Madden's recommendation, on which there were fifteen signers, all but one had signed recommendations for licenses granted on January 8th, 1908, previously to the granting of Madden's license; in the case of Goetsinger, out of twelve signers seven had signed recommendations for licenses previously granted for the same year. This state of affairs, which is not in contravention of the ordinance of the excise board passed on January 5th, 1903, is in direct contravention of the statute of this state respecting inns and taverns (*Gen. Stat.*, p. 1788), the forty-fifth section of which is as follows: "That the freeholders required to recommend to the court suitable persons for license to keep inns and taverns shall be such as shall not have recommended any other application for a license under the second section of this act, in the same township, city or borough for the same year." The second section thus referred to is the one prescribing the character of the recommendation required by the Inns and Taverns act. The question that is thus presented is which is paramount, the ordinance of the excise board or the statute of the state, and this in turn depends upon the question whether the act of the legislature that created these local boards conferred upon them unlimited and exclusive powers of legislation touching the granting of licenses to sell intoxicating liquors or only a particular function and a qualified jurisdiction with respect thereto. The act in question is "An act to establish an excise department in cities of this state," passed in 1902. *Pamph. L.*, p. 628. A mere reading of the enumeration of the powers conferred by this act upon the boards established under its provisions shows that such powers, in so far as they are legislative in character, are confined to the making, amending and repealing of city ordinances and by-laws. There is nothing in the act that clothes such boards with power by their ordinances either expressly or by implication to repeal or override the general statute law of the state regulating an im-

portant subject-matter the local administration of which is committed to such boards, nor does the act purport to be a complete scheme covering the entire subject-matter. On the contrary, its clearly expressed purpose is the administration of excise laws and not their abrogation or repeal. If any doubt could exist as to the soundness of this construction it is removed, as far as this court is concerned, by judicial decisions that are directly in point. In *Miller* v. *Camden,* 34 *Vroom* 501, it was held that the power conferred upon boards of excise by the act of 1886 (*Pamph. L., p.* 397) to prescribe penalties, although plenary in terms, was subordinate to the provisions of the city charter in so far as such ordinances were in contravention to such statute. Justice Gummere, delivering the opinion of this court in that case, said: "The legislature had, in granting its charter to Camden, already declared what should be the maximum penalty for the violation of its municipal ordinances, and that maximum remained unchanged by the transfer from the city council to the excise board of the power to pass ordinances regulating the sale of liquor and to punish violations of such ordinances."

In *Peer* v. *Board of Excise Commissioners,* 41 *Vroom* 496, it was held that the powers of an excise board appointed under the act of 1903 (*p.* 369), although unlimited in terms as to the licensing of inns and taverns, were to be exercised in subordination to the general act of 1889 regulating the sale of intoxicating liquors. In the very recent case of *Sexton* v. *Board of Excise Commissioners,* 47 *Id.* 102, in which the same act that is now under review was involved. it was held that the establishment of excise boards under that act did not extinguish the general limitations upon or regulations of the exercise of the licensing power contained in the Inns and Taverns act or other preceding act of general legislation. The precedent statute in that case was the act of March 3d, 1870, which prohibited the granting of a liquor license within one mile of the outside limits of a camp meeting association. This provision, it was held, was a subsisting limitation upon the licensing powers conferred in general terms by the act of 1902 upon the board of excise of Asbury Park

with respect to a license for an inn and tavern within one mile of Ocean Grove. Justice Reed, delivering the opinion of this court, said: "The purpose of the act to establish boards of excise in cities in this state was to transfer the licensing function from the body which in the several cities then possessed the licensing power to the new board to be specially constituted. All the restrictions which controlled the old board in the exercise of its authority to license, whether existing in the charter of the city or in the general acts applicable to such city, remained to control the exercise of power by the new board. * * * That the transfer of the licensing power from the common council to the board of excise commissioners under the act of 1902 did not repeal the then restriction on the licensing power seems apparent."

The conclusion in the present case, to which these decisions imperatively point, is that the provision of the forty-fifth section of the Inns and Taverns act touching the qualifications of signers to recommendations for liquor licenses is a subsisting and paramount regulation of that matter that is unaffected by the erection of the administrative tribunals effected by the act of April 8th, 1902, and that is unrepealed and irrepealable by the legislative acts of such bodies.

The proceedings brought up by these writs are reversed and the licenses so granted vacated and set aside.