40 N.J. Super. 217 (1956)
122 A.2d 649
OLIVIA WRIGHTSON SWITZ, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF MIDDLETOWN, A MUNICIPAL CORPORATION, WILLIAM C. JOHNSON, AND MONMOUTH COUNTY BOARD OF TAXATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1956.
Decided May 10, 1956.
*221 Before Judges CLAPP, JAYNE and FRANCIS.
*222 Mr. Herbert J. Hannoch argued the cause for the respondent (Messrs. Hannoch, Weinstein, Myers & Stern, attorneys; Mr. William S. Myers, of counsel).
Mr. Lawrence A. Carton, Jr., argued the cause for the appellants Township of Middletown, et al. (Messrs. Roberts, Pillsbury and Carton, attorneys).
Mr. Harold Kolovsky, Assistant Attorney-General, argued the cause for the appellant Monmouth County Board of Taxation (Mr. Grover C. Richman, Jr., Attorney-General; Mr. Thomas P. Nolan, Deputy Attorney-General, on the brief).
The opinion of the court was delivered by FRANCIS, J.A.D.
In this proceeding in lieu of mandamus the Law Division on January 16, 1956 ordered William C. Johnson, Assessor of the Township of Middletown, to assess all real property subject to taxation in the township for the year 1957 and subsequent years "by uniform rules and according to the same standard, which standard shall be the full and fair value of such real property and at the price at which, in his judgment, such property would sell for at a fair and bona fide sale by private contract on October 1st of the preceding year." The quoted language is the substance of the general duty imposed upon a municipal assessor under the New Jersey Constitution, Article VIII, Section I, paragraph 1, N.J.S.A. 54:4-1 and N.J.S.A. 54:4-23.
The order also commanded the Monmouth County Board of Taxation "to investigate, revise, correct and equalize" by May 1, 1956, all assessments made by Johnson of taxable property in the township for 1956 and subsequent years and in particular to revise, correct and equalize all such assessments for the year 1956 and subsequent years by the same true value standard as was imposed upon the assessor.
Johnson was further commanded that in the event the county board under N.J.S.A. 54:4-56 and 47 should require him to do so, "he shall make up and prepare corrected *223 tax lists and duplicates for the year 1956 under the supervision of said Board, and in which corrected tax lists and duplicates he shall comply with the directions of said Board and shall value and assess all real property subject to taxation in the defendant Township" by the true value standard described above.
A cross claim was filed by the township against the county board. In the event that plaintiff was granted the remedy applied for, the township sought thereby an order compelling the board to "investigate, revise, correct and equalize all assessments made by the * * * assessors * * * of the remaining fifty-one municipalities" of Monmouth County so as to conform to the true value standard. Relief was denied on this claim.
The township, its assessor and the county board have appealed from the adverse judgment.
By agreement the matter was presented in the trial court on the pleadings, affidavits, stipulations and documents as if a plenary trial had been conducted. As the result, certain facts may be referred to as beyond dispute.
The plaintiff, Olivia Wrightson Switz, is a resident property owner of Middletown. All of the properties in the township, including hers, were assessed for 1956 by Johnson at less than 100% of full and fair value as of October 1, 1955 and at less than 100% of the prices at which they would have been sold at a fair and bona fide sale by private contract on October 1, 1955.
On October 1, 1954 the Director of the Division of Taxation, in performance of his duties under N.J.S.A. 54:1-35.1 et seq. in connection with the ascertainment of the amount of school aid to be paid by the State to the township determined that the average ratio of assessed value to true value of the real property in the township was then 16%.
On September 28, 1955 the Director again pursuing his official duty with respect to the same subject, concluded that the average ratio at that time was 15.45%.
The Director's investigation which resulted in the determination of the 1955 ratio included a study of 862 current *224 sales of property in Middletown. Generally they occurred between July 1, 1954 and June 30, 1955. The total price of these sales was $9,268,037, but the total assessments upon the properties sold were only $1,385,575.
The following analysis of the sales shows the absence of uniform standard of assessment and disregard of true value as a basis for assessment:

 Range of Ratio
 Assessed Valuation Weighted Average for
Classification Sales to Sale Price the Classification
Vacant land ..... 124 6.04% to 80.00% 25.46%
Residential ..... 728 3.08% to 80.00% 14.40%
Farm ............ 5 10.43% to 35.16% 22.89%
Other ........... 5 10.10% to 30.97% 12.67%
 ____ ________________ ______
Totals .......... 862 3.08% to 80.00% 15.45%

The uncontradicted affidavit of H. Rowland Major, State Supervisor, Local Property Tax Bureau, Department of the Treasury, who actually compiled the data under the supervision of the Director, points out that the "ratio range runs from 3.08% to 80% of assessed to true value."
It is undisputed that these conclusions of the Director would be generally descriptive of the 1956 assessment list. And the stipulation was made that the 1956 tax list and duplicate had been prepared in accordance with the same general practice and procedure as in prior years, which methods the assessor believed accorded with the practice employed by other tax assessors throughout Monmouth County and the State. In actual confirmation of the stipulation, it appears from the Sixth Report of the Commission on State Tax Policy that in the tax years preceding 1953 residential property in the township was assessed at 14% of its true value and commercial and industrial property at 18% thereof.
The complaint herein was filed by the plaintiff on December 2, 1955, prior to the completion and delivery to the county tax board of the 1956 assessment list and tax duplicate. However, these documents were delivered to the board prior *225 to the hearing in the Law Division. Among other things, plaintiff pleaded that her property was not assessed at true value but discriminatorily and oppressively, which required her to bear a disproportionate share of the tax burden. She alleged also that all of the real property in the township was being assessed at varying fractions and percentages of true value and that she "is desirous of preventing a continuation and recurrence of the * * * discriminatory and illegal * * * assessment practices in said Township and of assuring the making of just, uniform and lawful assessments for the year 1956 and thereafter."
The judgment demanded in the nature of mandamus was broad and general. An order was prayed for commanding the assessor to perform his public statutory duty to assess all properties in the municipality, including that of the plaintiff, for 1956 and subsequent years at true value; and further commanding the county tax board to investigate, revise, correct and equalize all assessments for 1956 and thereafter so as to represent true value. Since, as already indicated, the 1956 assessment list had been filed with the county board, the relief requested was adjusted  apparently without objection  to the form recited in the final judgment.
At the outset we are confronted with problems concerning the method of redress. Appellants contend that mandamus will not lie (a) where another remedy exists, or (b) where the duty to be enforced is a discretionary one or involves the exercise of discretion. In extension of the argument that mandamus is barred where other relief is available, it is said also that R.R. 4:88-14 prevents pursuit of such peremptory procedure until the administrative remedy possessed by the plaintiff is exhausted.

(a)

Existence of Another Remedy.
Mandamus is an extraordinary remedy. Traditionally it cannot be employed where another adequate means of redress is available for the correction of the *226 particular wrong. Edward C. Jones Co. v. Town of Guttenberg, 66 N.J.L. 659 (E. & A. 1901); Raison v. Board of Education, 103 N.J.L. 547 (Sup. Ct. 1927); State ex rel. Lay v. Common Council of City of Hoboken, 75 N.J.L. 315 (Sup. Ct. 1907); 34 Am. Jur., Mandamus, § 42 (1941). However, a remedy to be deemed adequate must be one which is specific and competent to afford relief speedily, conveniently and effectively upon the very subject of the application. Raison v. Board of Education, supra; Edward C. Jones Co. v. Town of Guttenberg, supra, 66 N.J.L., at page 669; State ex rel. Heimov v. Thomson, 131 Conn. 8, 37 A.2d 689 (Sup. Ct. Err. 1944); State v. Erickson, 104 Conn. 542, 133 A. 683 (Sup. Ct. Err. 1926). The other relief must be "realistically" adequate and equally convenient, beneficial and effective. Mandamus will not be refused when another remedy is tedious, circuitous or unnecessarily burdensome, or will not place the plaintiff in statu quo, that is, in the same position he would have been had the duty been performed. The other remedy must be one which itself enforces in some way the performance of the particular duty, and not merely a remedy which in the end saves the party to whom the duty is owed unharmed by its nonperformance. Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953); Pierce v. Green, 229 Iowa 22, 294 N.W. 237 (Sup. Ct. 1940); State v. Erickson, supra; 34 Am. Jur., Mandamus, § 44 (1941); Chase's Blackstone (3d ed. 1890), 669.
Appellants say that plaintiff has a sufficient remedy by way of appeal from her assessment to the county tax board under N.J.S.A. 54:3-21. And they urge that the age-old qualification on mandamus as well as the obligation imposed by R.R. 4:88-14 to exhaust the administrative procedure bars this action. But is that remedy realistically adequate?
The Supreme Court recognized in Gibraltar Corrugated Paper Co. v. Township of North Bergen, 20 N.J. 213 (1955), the peremptory duty of the assessor to assess all properties at true value. The opinion pointed out that with respect to individual property owners the dominant principle to be *227 applied is equality of treatment and burden. We do not understand the holding to be that any standard of assessment other than true value will suffice to meet the statutory mandate even if it is uniformly applied throughout the municipality.
Manifestly, equality of burden cannot be achieved for the plaintiff by using the average ratio of 15.45% of assessed to true value. If a multiplier of 6 or 7 were applied to her assessment of $31,000, a valuation of $186,000 or $217,000 would result, apparently a grotesquely disproportionate figure. Nor could such multipliers be applied to the mass of properties in the township to produce even their approximate true value because the assessment ratio range runs from 3.08% to 80% of assessed to true value. To do so would bring the 3+% assessments up to 18% or 21% of true value and the 80% cases up to 480-560% of such value.
The only way in which the plaintiff could achieve equality of the tax burden (within the legislative rule as to method of assessment) in an appeal to the county board, would be to establish the true value of each individual property. Since it is conceded that the 1956 assessment range is generally the same as the State Director's sampling, obviously no common standard was used by the assessor and so no reasonably practicable means are available by which she can show the proper individual values.
The State Supervisor, already mentioned, gave his expert opinion that "the true value of all the assessed properties in Middletown Township can only be achieved by a revaluation of all the real estate * * * based upon competent appraisals of each individual property." That would be a prodigious task to impose upon the plaintiff or any other property owner. A less onerous one was described by our Supreme Court as "insuperable" (Gibraltar Corrugated Paper Co. v. Township of North Bergen, supra, 20 N.J., at page 219), and by the United States Supreme Court as a denial of due process, Hillsborough Tp., Somerset County, N.J. v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946). The Assessor pleads here in opposition to the *228 order under review that it was a physical impossibility for him to reassess properly all the properties in the 3 1/2 months intervening between the date thereof and May 1, 1956. The State Supervisor and the president of the county tax board assert that the process not only would take a year to complete but would involve tremendous expense as well. To require the plaintiff to do this (and within the three months' limitation for the disposition of all appeals to the county board, N.J.S.A. 54:3-26), in order to vindicate her own right and to enforce the public right is to reduce the alleged appeal remedy to a hollow formula. Thus it is plain that no such remedy is available as that which the sense of the cases requires to frustrate the claim to mandamus.
Moreover, the full import of the complaint is that plaintiff is seeking not only individual relief but to enforce the right which she holds in common with the public. The courts of our State have long taken the broad view that an interested citizen may do this. In Garrou v. Teaneck Tryon Co., supra, 11 N.J., at page 302, Justice Jacobs referred to the "far reaching and oft-cited opinion" of the Supreme Court in Ferry v. Williams, 41 N.J.L. 332, 339 (1879), where this was said:
"`These cases seem to indicate that with us the exception to the rule is extended so far as to justify this court in acting by mandamus, certiorari or quo warranto, at the instance of private persons, for the redress or prevention of public wrongs by public bodies and officers, whose official sphere is confined to some political division of the state, whenever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights, and the public convenience will be subserved by the remedy desired. The general indifference of private individuals to public omissions and encroachments, the fear of expense in unsuccessful and even in successful litigation, and the discretion of the court, have been, and doubtless will continue to be, a sufficient guard to these public officials against too numerous and unreasonable attacks.'"
See also Taxpayers Ass'n of Cape May, New Jersey v. City of Cape May, 2 N.J. Super. 27, 30 (App. Div. 1949); Tube Reducing Corp. v. State, 1 N.J. 177, 181 (1948); State ex rel. Lay v. Common Council of City of Hoboken, supra, *229 75 N.J.L., at page 317; Cooper v. Borough of Cape May Point, 72 N.J.L. 164 (Sup. Ct. 1905); 34 Am. Jur., Mandamus, § 57 (1941); 35 Am. Jur., Mandamus, § 320, at 75 (1941); Annotation, 165 A.L.R. 1431, 1436 (1946).
Pierce v. Green, supra, is strikingly similar to the present issue. Quotation from the opinion of the Supreme Court of Iowa seems desirable:
"The plaintiff is a resident of the city of Marshalltown, Iowa, and a payer of taxes on both real and personal property located in said city. Under facts stated * * *, the property of the plaintiff was assessed and taxed at sixty per cent of its actual value, while the property of those assessed by the defendants, as members of the State Tax Commission, was assessed and taxed at a much lower percentage of its actual value. It is further so admitted that the defendants knew that they were required by law to assess and tax all such property, at one hundred per cent of its actual value, as near as they could reasonably and fairly determine, and that they were to equalize assessments of taxable property on the same basis. But instead of doing so they knowingly, intentionally and arbitrarily directed assessors to value, assess, and tax property at but sixty per cent of its actual value, and, in originally assessing property which they are required by law to assess, they also knowingly, intentionally, and arbitrarily valued, assessed and taxed such property at percentages much lower than sixty per cent of the actual value. All of this was systematically done by the defendants, and with the further expressed intention to continue to so do. One does not need a pencil to calculate that such conduct on the part of the defendants was an unjust and unfair discrimination against the plaintiff and those in like situation, causing them to pay a larger share of the tax burden in proportion to the valuation of their property, than those assessed and taxed on a less percentage of valuation, thereby causing damage and injury to the plaintiff and those in like situation which will continue under the expressed intention of the defendants. * * *
* * * Since the statute requires that all property shall be assessed and taxed at its actual value, they have no right to disregard this legislative injunction, because they deem it unwise or inexpedient, or because others in their position in the past have so violated the law. Under the law and the facts they may be compelled by mandamus not only to act, but to so act as to bring about a certain result, that is, the valuation of property at its actual value. * * *" 294 N.W., at page 248.
To the same effect are State v. Erickson, supra; State Board of Equalization v. People ex rel. Goggin, 191 Ill. 528, 61 N.E. 339, 58 L.R.A. 513 (Sup. Ct. 1901).
*230 Considering the thrust of the action here in terms of an effort to enforce a public duty, obviously an appeal to the county board would not be an efficacious method of achieving the desired result. The expedient and uncomplicated avenue to its accomplishment is a court order directing performance by the official whom the Legislature charged with the obligation.
For these reasons, in our judgment mandamus presents the only adequate remedy available to the plaintiff.

(b)

Is the Act Commanded by the Order a Discretionary One?
In view of the final result reached, to be hereafter expressed, we deal with this point only as it relates to the assessor.
A well-understood qualification on the right to mandamus is that the command will not issue to require the performance of a discretionary act. Gallena v. Scott, 11 N.J. 231, 238 (1953). Discretion in this context means the "power or right conferred upon the officer by law of acting officially under certain circumstances according to the dictates of his own judgment and conscience, and not controlled by the judgment or conscience of others." 34 Am. Jur., Mandamus, § 66 (1941). The duty ordered performed must be an imperative and a ministerial one. Gallena v. Scott, supra, 11 N.J. 238.
An assessor's duty is mandatory and specific, not discretionary. He must assess the local real properties at true value. It is true that the consummation of the process, that is, the determination of actual value, requires the exercise of judgment and discretion. But that aspect of the operation is not affected. The order simply directs the performance of the legislative mandate  to assess  and that it be done according to the statutory formula of true value. No effort is made to control the method of achieving the end. That is left to the assessor.
*231 The same objection was raised in State ex rel. Foote v. Bartholomew, 103 Conn. 607, 132 A. 30, 34 (1925). The Supreme Court of Errors overruled it, quoting People ex rel. Jones v. Webb, 256 Ill. 364, 100 N.E. 224, 227 (Sup. Ct. 1912):
"`A better statement of the law seems to be, that while a judicial officer, or one exercising discretion or authority, may be compelled to act and to proceed to the performance of his duty, he cannot be controlled in his judgment or compelled to exercise his discretion in a particular manner by means of this writ. * * * Applying these general principles, the law is well settled that where assessing officers fail and neglect in the performance of their duty they may be compelled to act, but where it is necessary to exercise judgment and discretion as to valuations and the like, the court will not decide such questions for the officers and direct by mandamus what the judgment is or should be.'"
See also Gallena v. Scott, supra, 11 N.J., at page 238; Pierce v. Green, supra, 294 N.W. 248.

(c)

Is the Order so Oppressive That it Should Not be Sustained?
Appellants assert that the order will create confusion and disorder in the township and the county board; that it imposes a tremendous, inequitable and impossible burden, and subjects them to injustice and embarrassment. Where it appears that such results will follow, ordinarily the court, in the exercise of its discretion, will deny mandamus. State ex rel. Beronio v. Pension Commission, 130 N.J.L. 620, 624 (E. & A. 1943); Evans v. Villani, 19 N.J. Super. 86, 93 (App. Div. 1952); 34 Am. Jur., Mandamus, § 35 (1941).
The contention is directed primarily against the order to assess all the properties in the township for 1956. When the suit was instituted, the assessment list had not yet been filed with the county board. However, it had been done at the time of the hearing and judgment. Consequently, *232 the board was ordered to investigate, correct and equalize the assessments for that year so as to reflect true value; the assessor was directed to prepare corrected tax lists for 1956 according to the true value of the properties, if required to do so by the county board. We were informed at the oral argument that the county board issued such a directive to the assessor.
To support their position, the assessor and the township point out that there are 12,000 separate parcels of land to be assessed; the assessor is a part-time employee; there is no official tax map in existence. Proof was submitted to show that additional expert assistance and a year's time would be needed to accomplish the project.
Under the judgment, it was necessary to complete the reassessment by May 1, 1956 (N.J.S.A. 54:4-55), a period of 3 1/2 months. At the oral argument it appeared that about 1,200 such assessments have been made thus far. Counsel for the township, in answer to our inquiry, indicated that completion might be had by the end of December 1956. Plaintiff's counsel expressed the view that if the effort had been begun as soon as the matter was decided in the Law Division, the May 1 deadline might have been met. However, the record reveals no expert proof contradictory of the defendants' affidavits as to the length of time required.
We are impressed with the argument as to the burdensome character of the duty imposed as it relates to the assessment list for 1956. Consequently, the judgment will be modified so as to relieve all parties of its mandate for that year.

(d)

Future Scope of the Judgment.
The plea based upon the oppressiveness of the order loses its equitable content when related to 1957 and subsequent years. The assessments for 1957 do not have to be completed until January 10 of that year. N.J.S.A. 54:4-35. This is within the estimate of the time needed. *233 So interference by us beyond the 1956 aspect of the prescript is not warranted.
A somewhat similar claim of harshness was considered in State ex rel. Gillespie v. Walsma, 113 Fla. 726, 152 So. 196, 197 (1934). There the Supreme Court of Florida said:
"The duty required to be performed in this proceeding being a continuing one under the law, the plea of disorder and confusion to be occasioned by the issuance of a peremptory writ in the form prayed for must, if sustained, simply result in the carrying over of the required appropriation and tax levy into the next ensuing current budget of the respondent city, and not in a complete avoidance of the duty in its entirety."
Ordinarily mandamus will not be granted until there has been an actual default in the performance of a public duty. 34 Am. Jur., Mandamus, § 78 (1941). Of course, failure to assess at true value for 1957 has not yet occurred. But where the exigencies of the case demand or where a manifest intention not to perform the particular public duty appears, the rule does not apply. State ex rel. Morris v. Wrightson, 56 N.J.L. 126, 215 (Sup. Ct. 1893); State ex rel. Cleveland v. Board of Finance and Taxation, 38 N.J.L. 259, 262 (Sup. Ct. 1876); State ex rel. Williams v. Common Council of City of Rahway, 33 N.J.L. 111 (Sup. Ct. 1868); Annotation, 175 A.L.R. 648, 652, 659 (1948).
In the present situation, it is perfectly plain from the assessor's practice over the years and from the statements made to us on his behalf at the oral argument, that there is no intention to use true value as a standard for 1957 except under the compulsion of mandamus. The asserted reason is that municipalities generally throughout the State do not obey the statute.
If the property owner's action had to await actual failure to abide by the statute, the defense contention of impossibility of performance within the time limit for revision would propably be raised again; and the problem would go on ad infinitum.
*234 The language of the Colorado Supreme Court in Berkey v. Board of Com'rs, 48 Colo. 104, 110 P. 197, 200 (1910), on the point is noteworthy:
"The contention is that the demand for a levy occurring in the spring of 1908, it was too late for the levy of 1907 and too early for that of 1908. A court has power to grant the writ requiring a future levy at the regular time fixed by law therefor, if the facts show that the petitioner has a cause of action, and the conduct of the defendant justifies the belief that it has no purpose to act at any time. Were the contrary true, the defendant board might ever contend, as it does now, that there has been no refusal, hence the action does not lie; and it might thus always insist either that an action was too late, as the levy had been already made, or too early for a future levy, as the time for that had not yet arrived, and there having been no refusal, the board abstaining from specifically doing so, an action would then be premature. Thus a complainant with a just cause, his remedy by mandamus being exclusive, might, upon trifling pretexts, be forever barred of his right; it being forever and ever either too early, or else too late, for the board to comply with the demand. The law does not contemplate such a possibility. Neither will it be tolerated. To so hold, and thus allow and approve a premeditated and planned evasion, would be a mockery of justice."
The years following 1957 should create no problem. Once the true value standard is put into operation in accordance with the will of the Legislature and the decision and judgment of the court, since the duty is perpetual (Thompson v. United States ex rel. Cambria Iron Co., 103 U.S. 480, 26 L.Ed. 521 (1881)) compliance will be routine. If the Legislature exercises its prerogative of changing the existing statutory formula, vacation of the mandamus can be accomplished readily. (Compare the form of order in State ex rel. Morris v. Wrightson, supra, 56 N.J.L., at page 215.) Moreover, no specific objection is made to the judgment because it applies to future years beyond 1957.
With respect to the county board, our opinion is that the mandamus should be vacated entirely. As to 1956, on the record before us, compliance seems impossible.
The duty of a county tax board under N.J.S.A. 54:3-11, 13, 15 and 18, N.J.S.A. 54:4-46, 47, is primarily supervisory, although it is invested with broad power "in general *235 [to] do everything necessary for the taxation of all property in the county equally and at its true value." Section 47. Its investigation, revision, correction and equalization are an extension of the assessing procedure. Since the assessor, who is the all important point of origin of the process, is now under a judicial fiat to assess for 1957 and subsequent years at true value, we shall assume that when the product of his efforts for 1957 is filed as required by the statute, the board will do its duty with respect thereto. Unquestionably, authority is available for the view that when successive mandatory steps by different public officials or agencies are contemplated by a statutory system, a single mandamus action will lie to enforce each action in its proper sequence. State ex rel. Turner v. Village of Bremen, 116 Ohio St. 294, 297, 156 N.E. 134, 136 (Sup. Ct. 1927); McKie v. Rose, 140 F. 145, 149 (C.C.D.R.I. 1905), affirmed 145 F. 584, 590 (1 Cir. 1906); Guthrie v. Sparks, 131 F. 443, 451 (6 Cir. 1904); Hicks v. Cleveland, 106 F. 459, 462 (4 Cir. 1901); People ex rel. German Ins. Co. v. Getzendaner, 137 Ill. 234, 34 N.E. 297, 304 (Sup. Ct. 1891); Labette County Comm'rs. v. United States ex rel. Moulton, 112 U.S. 217, 5 S.Ct. 108, 28 L.Ed. 698 (1884); Annotation, 175 A.L.R. 648, 677 (1948). But under the circumstances disclosed by the record, we do not feel that an imperative need exists at the present time for the issuance of a mandatory order to compel fulfillment of the board's statutory duty in the future.

(e)

The Cross-Claim Against the County Board.
As already set forth, Middletown demanded by way of cross-claim that if an order issued to assess at true value, the county board in turn should be commanded to issue a similar order to the remaining 51 municipalities in Monmouth County. At the hearing in the trial court the issue presented thereby against the county board was permitted *236 to rest on the pleadings and the proofs submitted in the main case.
No sufficient proof was adduced as to the practice in the other municipalities; nor were they parties to the proceedings. Under the circumstances, justification existed for the dismissal of the cross-claim. However, in view of the important public nature of the question involved, and the rather summary way in which the matter was treated, the dismissal should not be considered res adjudicata as between the county board and Middletown, nor should it prejudice any future action which may be taken by Middletown with respect to the other municipalities. Therefore, although the judgment is affirmed, it is modified so as to show a dismissal without prejudice.

(f)

The Status of the Trial Judge.
Appellants point out that on January 17, 1956, the day following the entry of the judgment under review, the trial judge was removed at the order of the Governor. The action was predicated upon the assertion that his term of office had expired. As a result, the argument is advanced that the judgment here must be regarded as a nullity.
It is not necessary to decide directly whether Judge Lloyd was a de jure member of the Superior Court during the period of this litigation. That problem is presently in the courts for determination. It is sufficient for present purposes to determine whether or not he was a de facto judge at the time of hearing and judgment.
As to the latter question, we have no doubt. It has long been the law of our State that one who assumes an office legally and in good faith remains in it after his title has ended, is a de facto officer. State v. Gavin, 136 N.J.L. 47, 50 (Sup. Ct. 1947); State v. Cottrell, 117 N.J.L. 226, 229 (E. & A. 1936); Beattie v. Passaic County Board of Taxation, 96 N.J.L. 72, 74 (Sup. Ct. 1921); Byer v. Harris, 77 N.J.L. 34, 309 (Sup. Ct. 1909); Erwin v. *237 City of Jersey City, 60 N.J.L. 141 (E. & A. 1897); Oliver v. City of Jersey City, 63 N.J.L. 634, 638 (E. & A. 1899); Annotation, 71 A.L.R. 848 (1931).
The statement of the Court of Errors and Appeals in Oliver v. City of Jersey City, supra, is directly applicable and in our judgment controlling:
"There are no facts in this case to justify us in relaxing the wise and ancient rule, so deeply rooted in public policy, that the acts of de facto officers, holding under color of a title originally lawful, when acting in good faith, will protect third persons and the public in their dealings with them * * *." 63 N.J.L., at page 642.

Conclusion.
For the reasons stated, the judgment (including that on the cross-claim) against the assessor and Middletown Township is affirmed, except as modified. It is reversed as to the Monmouth County Board of Taxation.